(91 South. 788)

## TAMSETT v. HINES, Director General.
### (1 Div. 167.)

(Supreme Court of Alabama. Dec. 23, 1921.)

**1. Courts ⬤⟳97(5)—Federal court's construction of bill of lading in interstate shipment followed.**

The construction given a bill of lading in interstate shipment by the federal courts should control and govern state courts.

**2. Carriers ⬤⟳114—Owner's risk of freight delivered at nonagency stations not dependent on notice of nature of station.**

Under bill of lading in interstate shipment, providing that property destined to a nonagency station, when delivered on siding, shall be at owner's risk after detached from train, such risk is not dependent on his having knowledge or notice of the destination; station having no regularly appointed agent.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Action by James E. Tamsett against Walker D. Hines, as Director General of Railroads, operating the Southern Railway Company, for damages for failure to deliver a carload of household goods. Judgment for defendant, and plaintiff appeals. Affirmed.

Gaillard, Mahorner & Arnold, of Mobile, for appellant.

The plaintiff's special replication No. 2, for defendant's plea No. 1, was sufficient, and the court erred in sustaining the demurrers thereto. 120 Ala. 57, 23 South. 793; 66 Ala. 167, 41 Am. Rep. 749; 1 Ala. App. 348, 56 South. 26.

Smiths, Young, Leigh & Johnston, of Mobile, for appellee.

The provision in the contract of shipment set up in plea 1 was valid and binding, and plaintiff's replication thereto was inapt. 256 U. S. 540, 41 Sup. Ct. 549, 65 L. Ed. 1081; 248 U. S. 446, 39 Sup. Ct. 139, 63 L. Ed. 350; 249 U. S. 217, 39 Sup. Ct. 254, 63 L. Ed. 570; 250 U. S. 557, 40 Sup. Ct. 24, 63 L. Ed. 1138.

MILLER, J. This is an action for damages by James E. Tamsett, the appellant, against Walker D. Hines, as Director General of Railroads, operating the Southern Railway, for failing to deliver as agreed a carload of household furniture belonging to plaintiff, shipped from Albany, N. Y., to Shade's Stop, Washington county, Ala., on August 30, 1918. The plaintiff was the consignor and the consignee, and it is so averred in the complaint.

The counts of the complaint as last amended each follow the Code form of a complaint, declaring on a bill of lading of a common carrier. The defendant pleaded that the carload of freight was delivered in good condition, by being placed on the side track at

Shade's Stop after it had been detached from the train; that Shade's Stop was a nonagency station, and had no regularly appointed agent at the time of the shipment and delivery of the car; and the bill of lading issued to plaintiff for the car provides:

"Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from trains, or until loaded into and after unloaded from vessels."

To this plea the plaintiff replied that he was not informed or advised, and did not have knowledge at the time of the shipment, that Shade's Stop was a nonagency station, and that delivery of the car would be made by placing it on the side track.

Demurrers of defendant to this replication were sustained by the court. Plaintiff, on account of the adverse rulings of the court in sustaining these demurrers, suffered a nonsuit, with a bill of exceptions. This ruling of the court, sustaining the demurrers of defendant to this replication of plaintiff to that plea of defendant, is the only error insisted on in this case.

[1] That part of the bill of lading, as set out in the plea, which is applicable to and answers the allegations of the complaint reads:

"Property destined to * * * a station * * * at which there is no regularly appointed agent, * * * when * * * delivered on private or other sidings, * * * shall be at the owner's risk * * * after they are detached from trains. * * *"

This was an interstate shipment. The car was shipped from Albany, N. Y., to Shade's Stop, Ala. The construction given this bill of lading by the federal courts should control and govern this court. The identical provision in this bill of lading, as set out in this plea, was recently construed by the Supreme Court of the United States under circumstances similar to those appearing in the pleadings of this case. They hold this provision is reasonable and that the contract is valid. The full opinion of the court on that subject, as written by Justice Brandeis, is as follows:

"But at nonagency stations this course is often not feasible. There the field for controversy as to the facts was particularly inviting and the reasons persuasive for limiting the carrier's liability. Local freight trains are often late. Shippers or consignees cannot be expected to attend on their arrival. Less than carload freight awaiting shipment must ordinarily be left on the station platform, to be picked up by the passing train, and lots arriving must be dropped on the platform, to be called for by the consignee. At such stations the situation in respect to carload freight is not materially different. And this is true whether the car be loaded for shipment on the public siding or on a neighboring private siding, and whether the arriving loaded car be shunted onto a public siding or a private siding. There carload, as well as less than carload, freight, whether outgoing or incoming, must ordinarily be left unguarded for an appreciable time. It is not unreasonable that shippers at such stations should bear the risks naturally attendant upon the use. The reason why an agent is not appointed is that the traffic to and from the station would not justify the expense. The station is established for the convenience of shippers customarily using it. And the paragraph here in question was apparently designed to shift the risk from the carrier to shipper or consignee of both classes of freight. It does so in the case of less than carload freight by having the carrier's liability begin when the goods are put on board cars and end when they are taken off. It does so in the case of carload freight by limiting liability to the time when the car is attached to or detached from the train."

See Yazoo & Miss. V. R. Co. v. Nichols, 256 U. S. 540, 41 Sup. Ct. 549, 65 L. Ed. 1081.

[2] This court has recognized the right of a common carrier to make a contract, express or implied, with the shipper, that it will assume no liability as a warehouseman at a nonagency station. In South & North R. R. Co. v. Wood, 66 Ala. 167, 41 Am. Rep. 749, speaking through Justice H. M. Somerville, this court said:

"The law does not require of railroad companies the absolute duty to construct or keep warehouses at every station along their route of travel or transportation. They are required only to do the best their means will enable them to do, under existing circumstances, and must act in accordance with the reasonable necessities of their usual business. Red. on Car. § 120. We can see no reason why a railway company, acting as a common carrier, cannot stipulate, by a contract express or implied, that their liability as a carrier shall terminate with a delivery at a particular point, and that they will assume no liability at all, in such case, as warehousemen."

In that case each party knew the station of delivery was a nonagency one; but it was not held that such knowledge was necessary to make an express contract valid and binding. The defendant by this express contract agreed with plaintiff to terminate its liability as a common carrier when it delivered the property in the car on its side track, detached from the train at a nonagency station, and by the contract it assumed no liability at such station as a warehouseman. The plaintiff and defendant, by this bill of lading agreed that defendant would discharge itself of liability and perform its part of the contract as a common carrier if it delivered the car with the property, within a reasonable time, in good condition, detached from the train on the side track at Shade's Stop, if it was a station without a regularly ap-

pointed agent, and after that the property in the car thus delivered would be at the plaintiff's—the owner's—risk. There is nothing in the contract, appearing from the replication, providing that, if the destination station has no regularly appointed agent, then the plaintiff, the consignor and consignee, must be informed or advised thereof, or have such knowledge before the shipment is made, and also know that the delivery will be made on a side track. The courts cannot breathe these conditions into the agreement. The replication fails to aver these conditions or provisions are in the bill of lading. This renders the replication defective and insufficient.

The courts must interpret this bill of lading as written, according to the intent of the parties, and the courts must enforce it, if its terms are reasonable and the agreement valid. The courts must enforce it, without varying the contractual stipulations in it by oral evidence, and without adding conditions or provisions to it, which are not mentioned in it. 1 R. C. L. Supp. p. 1031, §§ 19 and 21; Yazoo & Miss. V. R. Co. v. Nichols, 256 U. S. 540, 41 Sup. Ct. 549, 65 L. Ed. 1081; The Lady Franklin, 8 Wall. 325, 19 L. Ed. 455; The Delaware, 14 Wall. 579, 20 L. Ed. 779; South & North Ala. R. Co. v. Wood, 66 Ala. 167, 41 Am. Rep. 749. These terms have been declared reasonable, and the bill of lading valid, under similar circumstances as in this case, by the Supreme Court of the United States, and these contractual stipulations cannot be varied or changed by parol evidence as attempted by the averments of the replication; hence the trial court did not err in sustaining the demurrers of defendant to this replication of plaintiff to the plea.

As there is no error in the record, the case is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.