BRUNOT, J.
 

 This case involves the interpretation of a certain demurrage and storage tariff issued under General Order No. 7 of the Director General of Railroads.
 

 While the suit was pending in the civil district court, Andrew W. Mellon was appointed Director General of Railroads in place of James C. Davis, and he, by appropriate motion and order, was substituted for James C. Davis as the plaintiff herein.
 

 In the civil district court the plaintiff’s demands were rejected, and the suit was dismissed. On appeal to the Court of Appeal, the judgment was avoided and judgment was rendered in favor of the plaintiff for $878.59 with legal interest on each item of the account from the due date thereof as fixed in the court’s decree. 132 So. 289. On relator’s application to this court, a writ of review issued, and, in response thereto, the record has been sent up and the case is now before us.
 

 The suit is for demurrage on ten carload shipments of hay. The sum claimed is $1,-589.29. It appears that defendant was charged with demurrage upon three cars of hay that were not consigned to him. The sum of the admittedly erroneous charge is $710.70. The Court of .Appeal deducted that amount from the sum claimed and rendered judgment for the balance.
 

 On the trial there was introduced, as evidence in the case, the record in No. 16105 of the docket of the United States District Court for the Eastern District of Louisiana, in the matter entitled Walker D. Hines, Director General of Railroads, v. Benedict Commission Co. The same facts are pleaded in that case as are presented here. The cases appear to be identical except as to the parties litigant, the railroads which handled the shipments, and the fact that the Benedict Commission Company Case was tried by a jury. In that ease Judge Rufus E. Foster accepted the verdict of the jury and rendered judgment in accordance therewith, rejecting the demands of the plaintiff and dismissing the suit. There was no appeal from this judgment, and counsel for defendant stress that fact as being an acquiescence in the correctness of the judgment. Relator relies upon the following assignments of error:
 

 “(1) That the Court of Appeal for the Parish of Orleans erred in failing to follow the Federal Court decision in the matter entitled ‘Walker D. Hines, Director-General of Railroads, v. Benedict Commission Co.,’ No. 16,105 of the docket of the United States District Court for the Eastern District of Louisiana, which interpreted and construed the • same order of the Director-General of Railroads and the same tariffs issued thereunder as involved in this controversy and under identical facts and circumstances. Petitioner avers that the state courts are bound by the decisions of the federal courts construing federal legislation, proclamations and orders relating thereto. Western Union Telegraph Co. v. Conditt (Tex. Civ. App.) 233 S. W. 234; Tamsett v. Walker D. Hines, Director General of Railroads, 207 Ala. 97, 91 So. 788, 22 A. L. R. 875.
 

 “(2) That the Court of Appeal for the Parish of Orleans erred in disregarding the fact that the decision rendered in the Federal Court in the matter entitled ‘Walker D.
 
 *135
 
 Hines, Director General of Railroads v. Benedict Commission Co.,’ which was unappealed from, the Benedict Commission Company was decreed not to be liable for charges which by the decision of the Court of Appeal, under identical facts and circumstances, Ferguson would be compelled to pay, and, hence, a clear case of discrimination (in the shape of a fine of nearly nine hundred dollars plus thirteen years interest) against Ferguson and in favor of one of his competitors is thereby created.
 

 “(3) That the Court of Appeal of the Parish of Orleans erred in its construction and interpretation of the tariff under which suit was brought in holding that said tariff provided for demurrage on cars loaded with hay consigned to dealers in New Orleans where there was uneontradicted testimony to the effect that it was the universal custom and practice of the railroads to unload the hay in their warehouses, and further that there was uncontradicted testimony to the effect that at the time said shipments of hay arrived in New Orleans there were ample storage facilities at the disposal of the railroad administration in which defendant’s hay might have been stored.
 

 “(4) That the Court of Appeal erred in holding that the defendant Ferguson might be liable for demurrage where plaintiff failed to allege or prove that written notice of arrival of cars was given to defendant in view of the provisions of the joint storage and demurrage tariff under which this suit was brought, and which reads as follows: ‘Agents are cautioned that in order to be legal notices of the arrival of cars must be in writing and must contain all the items of information specified by this rule.’ ”
 

 The first and second assignments of error present issues which are not mentioned in the opinion of the Court of Appeal. These issues, briefly stated, are that-the Court of Appeal erred in failing to follow the decision of the federal court in the Walker D. Hines-Benedict Commission Company Case, and by failing to do so created a discrimination against the defendant and in favor of one of his business competitors. It is conceded that the demurrage charges on seven of the ears of hay are correct and due the plaintiff, if defendant’s defenses are not well founded.
 

 Plaintiff’s counsel cite a number of authorities in support of the general rule that the tariff must be adhered to under all circumstances. One of these authorities is Davis, Director General of Railroads, v. Timmonsville Oil Co. (C. C. A.) 285 F. 470, 472. In that case it is said:
 

 “Demurrage charges are part and parcel of the transportation charges, i and are covered by the same rules of law. They are a part of the tariff, and must be collected from the shipper or the consignee of the freight to the same extent as the charge for carriage. A penalty is imposed on the carrier for failure to collect (Union Pacific Ry. v. Goodridge, 149 U. S. 690, 691, 13 S. Ct. 970, 37 L. Ed. 986); the purpose of the law being, of course, to secure absolute equality between shippers.”
 

 We do not understand that the principles announced or followed in the cases cited by plaintiff’s counsel are questioned. The defendant contends that no demurrage had accrued and that he was only liable for a storage charge. His contention is based upon the following grounds: (1) That; in New Orleans, it was a custom of long standing, well known to all local consignees of carload shipments of hay, that upon the arrival of cars of hay the carrier would unload the hay
 
 *137
 
 into warehouses available to it and the consignee would be billed for a storage charge thereon. (2) That, at the time defendant’s hay arrived in New Orleans, the carrier had ample warehouse space for its immediate storage. (3) That the tariff requires the delivery to the consignee of a written notice of the arrival of carload shipments and it specifically provides that no other form of notice thereof is legal.
 

 In its opinion the Court of Appeal quotes General Order No. 7 of the Director General of Railroads and excerpts from the tariff issued thereunder, and says:
 

 “No where in the general order or the appendix thereto is carload shipments of hay exempted from the operation of the demur-rage .tariff.
 

 “On February 7th, 1918, the carriers issued Joint Demurrage and Storage Tariff No. 1-C, which was ‘issued under special authority of the Railroad Commission of Louisiana, Order No. 2169, without formal hearing, in conformity with Order No. 7 of the Director-General of Railroads of the United States.’
 

 “The provisions of Tariff No. 1-C conform to the requirements of General Order No. 7 and the appendix thereto, and the ears to which the demurrage tariff was applicable are listed in Item No. 1, Rule No. 1 of the Tariff as follows: — ‘cars held for or by consignors or consignees for loading, unloading, forwarding directions, or for any other purpose, are subject to these Demurrage Rules', except as follows. * * * ’
 

 “An examination of the exceptions provided shows that carload shipments of hay are not included in them.
 

 “We further find in this Tariff Item No. 13, Rule No. 1, dealing with freight subject to the rules, Section B., which provides: ‘Section B — Other car load freight held in ears for delivery and subsequently unloaded in or on railroad premises is subject to demurrage rules while in cars and to these storage rules after it is unloaded.’
 

 “After a careful examination of the record we have reached the conclusion that Tariff No. 1-C conforms to the General Order No. 7 and eliminates those provisions of the earlier tariff, effective prior to February 10th, 1918, whereunder carload shipments of hay arriving in New Orleans could be retained in cars subject to storage and not to demurrage charges.”
 

 The Court of Appeal found, from the record, that prior to February 10, 1918, the custom alleged as a defense to this suit was authorized by the tariff then in existence. This is presumably one of the reasons why the tariff issued under General Order No. 7 of the Director General of Railroads specifically requires that, in order to be a legal notice, the notice to the consignee of the arrival of cars must be in writing and must contain all the information required by the rule. Such a notice was not given this defendant. Two witnesses, one of them testifying from the original records of the carrier compiled in the usual course of business, say that defendant was notified of the arrival of the cars. It is not pretended that the notice was in writing or that defendant had notice of the items as required by the rule. No notice except such as is prescribed by the rule is legal. The fact that defendant had knowledge of the arrival of the cars, that he paid all storage charges demanded of him thereon, and that the agent of the carrier orally requested him to accept delivery of the cars, does not relieve the carrier of the necessity of serving the defendant with the written notice required by the rule. By the demands upon the defendant for, and his payment of
 
 *139
 
 storage • charges on the cars, especially in view of the fact that such charges were in conformity with a long-standing and well-known custom, made it imperatively necessary, both in equity and law, that the written notice, containing all of the items of information required by the rule, should have been served upon him.
 

 There was no written opinion in the Walker D. Hines v. Benedict Commission Co. Case, referred to supra, and we do not know whether or not that case was decided upon a question of fact or upon an interpretation of the demurrage and storage tariff, issued under General Order No. 7 of the Director General of Railroads, that led the federal court to reject the plaintiff’s demand and dismiss the suit. However, what may have been the court’s reasons for its decree is not so important as adherence to the well-recognized principle that, where the acts of federal agencies are involved, state courts are governed, with reference thereto, by the rules applied and decisions rendered by federal tribunals. Western Union Telegraph Co. v. Conditt (Tex. Civ. App.) 223 S. W. 234; Tamsett v. Hines, Director General of Railroads, 207 Ala. 97, 91 So. 788, 22 A. L. R. 875; Robidoux v. Chicago & Northwestern Railway Co., 113 Neb. 682, 204 N. W. 870, 41 A. L. R. 446; Boston & M. R. R. Co. v. Hooker, 233 U. S. 97, 34 S. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450; Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.
 

 For the reas.ons stated, the judgment of the Court of Appeal of Orleans Parish rendered herein is avoided, and the judgment of the civil district court rejecting plaintiff’s demand and dismissing the suit is reinstated and made the final judgment of this court; the cost in all courts to be paid by the plaintiff, respondent herein.