On Rehearing.
 

 ROGERS, Justice.
 

 This case is one purely and simply for injunctive relief, and the question presented to this court for decision is whether the court below in refusing the relief sought abused the discretion vested in it by law.
 

 The facts established on the trial of the application for the preliminary injunction, as shown by the return of the trial judge based on the note of evidence and the exhibits, are as follows, viz.:
 

 The defendant, Arkansas-Louisiana Pipe Line Company, acquired an oil and gas lease from one F. E. Gloyd, on August 29, 1932. This lease covered 80 acres of land in Caddo parish, and was recorded in the parish records on September 23, 1932. The lessee began drilling operations on September 16,1932, and on September 29, 1932, when the temporary restraining order issued, had drilled 211 feet and set and cemented casing. On September 26,1932, ten days after the drilling operations had begun, relator, United Gas Public Service Company, obtained an act of conveyance from one Mamie Bird and others of an undivided seven-fortieths interest in the 80 acres. This deed was recorded in the parish records on September 29, 1932, and on the same day the present suit was filed.
 

 The land in question is cut-over land, never in cultivation and never inclosed, situated within a proven gas field of not less than 2,000 acres, upon which the relator owns gas leases and upon which, under its leases, it has drilled seven producing wells. From these wells, relator, which is engaged solely in producing and selling natural gas, is daily taking gas, having taken 130,000,000 cubic feet therefrom during the month of August, 1932. The lands on which relator owns leases and operates the adjacent gas wells entirely surrounds the 80-acre tract involved in this controversy. Relator’s wells are daily draining the 80-acre tract, and if continued and the tract is not protected from such drainage, will entirely drain all the gas from under it. The tract has little, if any, practical value other than for natural gas or other minerals.
 

 The defendant’s lessor and immediate authors in title alone have, for more than twenty years, manifested acts of ownership or possession, having paid the taxes for more than twenty years and executed and recorded a mineral lease and kept a man employed to go over the land three or four tames a year to prevent destruction of the little second growth timber left on it. The authors in title of relator have apparently never known of the land, nor until recently, when selling to relator, have ever made any claim of any interest therein. They are some of the collateral relations of .the wife of one A. M.
 
 *1033
 
 Gloyd, who obtained a deed to the property in 1907, and in 1909 executed a deed thereof to the Louisiana Land, Lumber & Coal Company. The wife of A. M. Gloyd died in 1908. No claim to any interest in the property is shown to have ever been asserted by her succession representatives.
 

 The respective chains of title of the plaintiff and the defendant are set forth in our original opinion. So far as the record title to the property is concerned, it appears to be in Albert Baldwin or his heirs. Whether or not that title has been lost by prescription we are not presently concerned. And relator must stand on the strength of his own right or title rather than on the weakness of the right or title of the defendant. ,
 

 Belator contends that under paragraphs 3 and 8 of article 298 of the Code of Practice it was the mandatory duty of the trial judge to issue the preliminary injunction hex-ein. But the cited article and the other articles of the Code of Practice relating to injunctions have been modified by Act No. 29 of 1924. Under the statute the writ of injunction is not a writ of right, the legal discretion of granting or withholding the writ being reposed in the court of the first instance after hearing the parties. See American National Bank v. Bauman, 173 La. 336, 137 So. 54.
 

 “The object had in view, in enacting the act of 1924, was to rid the state of the abuse to which the ex parte issuance of the writ of injunction had been subjected for many years, by arranging the procedure for its issuance so that the judge would have to act no longer blindly on the face of the application for the writ, but would be placed in position to act with the crucial facts before him, obtained contradictorily with the party sought to be enjoined, after a prompt hearing, and with the right in the exercise of a sound discretion, to grant a temporary restraining order pending the hearing.” Id., page 341 of 173 La., 137 So. 54, 55.
 

 Belator further contends that as a co-owner to the extent of an unincumbered undivided seven-fortieths interest in the 80-aere tract of land involved herein it is entitled to prevent defendant from drilling on the property for oil and gas without its consent and against its wishes. In support of its contention, relator relies on the cases of Cotten v. Christen, 110 La. 444, 34 So. 597, and Gulf Refining Co. v. Carroll, 145 La. 299, 82 So. 277. Neither of these cases, in our opinion, is appropriate to the instant case.
 

 The case of Cotten v. Christen involved the cutting of timber by a co-owner. There the court held that the defendant co-owner could not cut the timber on the land owned in common, and that such cutting, if permitted, would constitute irreparable injury. The decision is predicated on the generally accepted fact that growing trees, forests, etc., have other than a commercial value. Their cutting, if permitted, would constitute a destruction rather than an enjoyment of the property by the owners in common.
 

 In the case of Gulf Refining Co. v. Carroll, the court held that a co-owner was without right to exploit the common property for oil or gas and, consequently, was not authorized to convey that right to another. It does not appear from the opinion in the case that the land involved was proven oil or gas land nor
 
 *1035
 
 that it was being drained and destroyed by adjacent wells.
 

 In both of the cited cases, the titles of the landowners were not in contest. Such is not the ease in the instant proceeding. Defendant’s title and possession are admitted by relator, but relator’s title is not admitted by defendant.
 

 The issue presented for our consideration is not one involving a trial of the title to the land in dispute. The title of the property is involved only so far as it is necessary for relator to show that it has a right in the property which it is necessary to protect by injunction and also for the purpose of showing that defendant holds under a lessor claiming ownership of the property, and therefore is not a mere trespasser.
 

 If it be conceded that the title of relator was proved or admitted, the question then arises whether the damage occasioned relator by the court’s refusal to grant the Injunction would be irreparable. We do not think it would be. On the contrary, if the injunction were granted, it might cause irreparable injury to the defendant. In that event a tract of land that has no value except for the production of oil and gas might be destroyed and denuded of that which' creates its value and its owners left without any remedy either to recover therefor or to prevent the loss.
 

 • The gas under the property in dispute, if there be any gas there, is being extracted daily by relator through the wells which it is operating on the adjacent property.
 

 ■ Owing to the fugitive character of gas, defendant would not be able to show how much gas was drained from the land into relator’s wells, if the injunction sought herein were granted. It might well be that there is no gas under the property, and relator would not be damaged at all by defendant’s drilling operations. The only way in which defendant can demonstrate that there is any gas under the property is by drilling for it and bringing it to the surface.
 

 On the other hand, if the injunction is not granted, all damages occasioned relator by the drilling of gas wells by defendant is exactly compensable in money. It would be a simple matter to measure the gas extracted from the land through the well or wells drilled by defendant, and to require an accounting therefor. Cf. Natalie Oil Co. v. L. R. & N. Co., 137 La. 706, 69 So. 146.
 

 If relator be, as it claims to be, a co-owner with defendant’s lessor of the 80-acre tract of land, the preservation of its value by the drilling operations of defendant, representing a co-owner, cannot by any stretch of the imagination be said to be injurious to relator’s rights as such co-owner. And relator’s interest in the land is not admitted but is denied.
 

 The apparent object of relator’s suit is to destroy, and not to preserve, the property in dispute. By refusing to grant the injunction sought, the court below has rendered the accomplishment of that object impossible. There is nothing in the record that would justify us in reversing its decision.
 

 After the trial of the rule for the preliminary injunction, relator filed pleas of estoppel and prescription and a supplemental and amended petition. The pleas were referred
 
 *1037
 

 to
 
 the merits 'and the petition was ordered filed. The issues which they present were riot considered by the court below and are not before us now. They will be properly disposed of when the ease is heard on its merits.
 

 For the reasons assigned, our former decree is recalled, and it is now ordered that the rule nisi herein issued be discharged and relator’s application for writs of certiorari and mandamus be denied at its cost. Relator’s right to apply for a rehearing is reserved.
 

 ST. PAUL, J., absent on account of illness, takes no part.