Canavan, J.
This is an action by Consolidated Rail Corporation (hereinafter ‘ ‘Conrail”) to recover from ArthurG. Silk,Inc. (hereinafter “Silk”), as consignee of ten rail shipments, $5,468.63 in penalty charges assessed against those ten shipments because each shipment contained fiberboard cartons[1] not properly marked for identification and allegedly violated an applicable rail transportation tariff. Conrail assessed the penalty charges against the shipments consigned to Silk after receipt, on each shipment, of an inspection report by the Railroad Perishable Inspection Agency (hereinafter “RPIA”) stating that each shipment violated the tariff.
In its answer, Silk denied Conrad’s allegations and raised two defenses:
(1) The statute of limitations and (2) a defense resting on the assumption that Silk, although consignee of each of the ten shipments, had no beneficial interest in the shipments and is therefore not liable for any penalty charges.
After trial the court found for the defendant.
At the trial there was evidence tending to show the following:
Conrail, through a witness qualified as an expert by the court on rail transportation and penalty charges, introduced documents showing that Conrail delivered to Silk as consignee, ten railroad shipments originating in Texas in February, March and April of 1977. Silk, as consignee, was liable for all freight charges on those shipments. Conrail introduced for each shipment inspection certificates prepared by RPIA, a third party, wholly independent of both Conrail and Silk. Those inspection certificates are headed “RAILROAD PERISHABLE INSPECTION AGENCY”. Directly below are the words “SHIPMENT DOES NOT COMPLY WITH LOADING AND CONTAINER TARIFF”. It is followed by the words “District”, “Date”, “Location”, “Freight Agent”, “Car”, “Commodity” that are all answered and a description of the “container” as a “FBd/box” (fiberboard box); it further states that it does not comply with Tariff No. “FCT-1-1” because “FBd Box not marked for identification”. The signature of the District Inspector appears on the document.
Conrail also introduced two identical tariffs, one governing shipments originating in Texas (Tariff SWL 2005, FCT 2-H) and the second governing transcontinental shipments (Tariff TCFB 44-R, FCT 1 -A). Both tariffs provide for a 20% penalty charge, that *160 is added to the freight charges, on any shipment more than 10% of the weight of which is contained in fiberboard cartons not properly marked for identification. Conrail introduced both tariffs because, although each shipment originated in Texas, the RPIA inspection certificate for each shipment stated that the shipment violated the transcontinental tariff. During the trial, counsel agreed that tariff SWL 2005 FCT 2-H (hereinafter “the Tariff’) applied to the ten shipments at issue here and stipulated that (1) each shipment contained wirebound crates, polymesh bags and fiberboard cartons and (2) the tariff applied only to fiberboard cartons. Conrail also introduced Waybills which showed that Silk was the consignee of each shipment and that Conrail notified Silk of the penalty charges. Silk refused to pay those additional amounts.
Silk introduced no documents and presented no witnesses.
At the close of the trial, Conrail filed the following requests for rulings of law and the court ruled as indicated:
1. The defendant, as consignee of the cars which are the subject of this action, is liable for all charges properly due under applicable tariffs. Northwest Pacific Railroad v. Birchwell, Inc. 349 F.2d 497, 498 (5th Cir.1965); Atchison, T. & S. F. Ry., Co., v. Midland Cooperative, Inc., 306 F. Supp. 723 (W.D. Oklahoma 1969); 49 U.S.C. §§ 3(2), 3(3). COURT: Allowed.
2. Additional transportation charges due to shipment of goods in boxes not properly marked for identification as transportation charges are covered by the rules of law that apply to freight charges. Accord, Davis v. Timmonsville Oil Co., 285 F. 470 (4th Cir. 1922); Illinois Steel Co. v. B&O R. Co., 320 U.S. 508 (1944). COURT: Allowed.
3. Transportation charges, under the Interstate Commerce Act incurred pursuant to a filed tariff, are accorded legally superior status, that of law. In re Penn Central Transportation Company v. Otolo, 1979 Mass. App. Div. Adv. Sh. 321, 324. COURT: Allowed.
4. Defendant is liable for the penalty charges even though plaintiff made demand for payment of those charges after delivery of the shipments. Davis v. Timmonsville Oil Co., 285 F. 470 (4th Cir. 1922). COURT: Allowed as a correct statement of law. See findings of fact below.
5. The plaintiff is entitled to pre-judgment interest on transportation charges as a matter of law. Southern Pacific Co. v. Miller Abattoir Co., 454 F.2d 357, 362 (3rd Cir. 1972); 49 U.S.C. § 6(7). COURT: Allowed as a correct statement of law but see findings of fact below.
6. The evidence is sufficient as a matter of law to warrant a finding in favor of the plaintiff. COURT: Denied. See findings of fact.
The court made the following findings of fact:
Plaintiff corporation has brought an action to recover charges for having shipped mixed vegetables to the defendant consignee. During the course of the trial, plaintiff introduced, over defendant’s objections, RPIA Notices (Exhibit 3) as business records. These notices indicate that the commodities shipped were not marked for identification as required by the applicable tariff. It was also stipulated at trial that the shipments in question involved wirebound crates, polymesh bags and fiberboard cartons. In addition, the parties agreed that the tariff in question was applicable only to fiberboard cartons.
I am persuaded by the weight of the evidence before me that the plaintiff has not proven that the defendant’s boxes were not properly marked for identification in accordance with Tariff 2005, Item 2700 FCT-2-H.[2]
*161 The plaintiff claims to be aggrieved by the court’s ruling on request No. 6 that it has not proven that the shipments accepted by Silk as consignee violated the applicable tariff and argues that as a matter of law the evidence introduced by Conrail requires a ruling that Conrail has made a prima facie showing of a tariff violation and in the absence of contrary evidence introduced by Silk, judgment must be entered in Conrail’s favor.
The question to be decided is whether the trial court erred as a matter of law in finding for Silk after introduction by Conrail of inspection certificates made and prepared by a third party, RPIA, where the statements contained in those documents were not rebutted by any evidence offered by Silk.
We are of the opinion that the inspection certificates were properly admitted in evidence as business records under G.L.c. 233, §78 (as amended by St. 1954, c. 442, § 1) and as third party documents authorized by the contract between Silk and Conrail within the meaning of G.L.c. 106, § 1-202.
G.L.c. 233, § 78 provides in material part:
An entry in an account kept in a book or by a card system or by any other system of keeping accounts, or a writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter.
The inspection certificates were made and signed by a district inspector in the regular course of the business of RPIA and state that each of the ten shipments violated an applicable rail transportation tariff because each shipment contained fiberboard cartons which were not properly marked for identification.
As nothing to the contrary appears, the admission of the inspection certificates implies a finding of the facts prerequisite to their admission and are to be considered as evidence of the facts therein stated. Sawyer & Co. v. Southern Pacific Co., 354 Mass. 481, 483 (1968); Bennett v. Bennett, 315 Mass. 59, 62 (1943); Saba v. Cohen, 333 Mass. 557, 558 (1956). The inspection certificates admitted in evidence as business records under G.L.c. 233, § 78, were not made prima facie evidence under the statute and the trial judge could give it such weight as in his judgment it was fairly entitled to receive. He gave it no weight and was not bound by such evidence. Hohman v. Hemmen, 280 Mass. 526, 529-530 (1932); Hathaway v. Checker Taxi Co., 321 Mass. 406 (1947).
We find that the RPIA inspection certificates are third party documents within the meaning of G.L.c. 106, § 1-202 and the statements contained in those documents are prima facie evidence of tariff violations.
Conrail delivered each of the ten interstate commerce shipments to Silk, as consignee, who accepted them. As consignee, Silk entered into an implied contract for each shipment under which he agreed to pay Conrail all transportation charges owing on the shipments. Atchison T. & S.F. Ry. Co. v. Hurst Bros. Fruit Co., 34 F. 2d 583 (W.D. Mo. 1929); Northwest Pac. R. Co. v. Burchwell Co., 349 F. 2d 497 (5th Cir. 1965); Portotransport, Inc. v. Consolidated Diesel Elec. Corp., 19 F.R.D. 256 (S.D. N.Y.1956).
Conrail had a statutory duty not do discriminate among shippers or consignees, 49 U.S.C. § 2, as to the transportation charges that it bills to its customers and it must collect all owing charges. We agree with Conrail when it says that where a contract, as here, calls for the assessment on a shipment of additional rate charges or penalties if certain *162 conditions exist, that contract correspondingly calls for an inspection of the shipment to determine if such conditions exist. Conrail had to determine whether circumstances existed under which additional charges must be assessed on the shipments under one of the applicable transportation tariffs. Conrail received from RPIA, a third party, independent of either Conrail or Silk, inspection certificates showing that, as to each shipment, the inspector found tariff violations. G.L.c. 106, § 1-202 states in pertinent part: “A document in due form purporting to be a bill of lading...or inspector’s certificate.. .or any other document authorized or required by the contract to be issued by a third party shall be prima facie evidence of its own authenticity and genuineness and of the facts stated in the document by the third party.” (emphasis added) This statute was enacted into law by the legislature because it was intended that it “supply judicial recognition for documents which have traditionally been relied upon as trustworthy by commercial men.” U.C.C. Official Comment 1 to §1-202.
The inspection certificates prepared by neutral third party RPIA, in the absence of evidence showing bias or error, had an inherent trustworthiness and became prima facie evidence of its own authenticity and genuineness and of the facts stated in the documents.
Here, the ten inspection certificates stated that a tariff violation was found as to each shipment because fiberboard containers in the shipment were not marked for identification.
In Cook v. Farm Service Stores, Inc., 301 Mass. 564, 568 (1938), which contains the classic discussion of prima facie evidence the court said, “Prima facie evidence means evidence which not only remains evidence throughout the trial but also has up to a certain point an artificial legal force which compels the conclusion that the evidence is true and requires the judge to give effect to its unquestionable truth by a ruling or a direction to the jury. It retains the artificial legal force and compelling effect...until and only until, evidence appears that warrants a finding to be contrary.” Where the contents of the inspection certificates in the instant case are not met by evidence to the contrary, the facts therein recited must be taken as true. Malloy v. Coldwater Sea Food, 338 Mass. 554 (1959); McGovern v. Tinglof, Jr., 344 Mass. 114 (1962); LIACOS, HANDBOOK OF MASS. EVIDENCE, 5th Edition; U.C.C., Official Comment, § 1-202.
Silk introduced no documentary or testimonial evidence. It only stipulated with .Conrail that each shipment contained wirebound crates, polymesh bags and fiberboard cartons and that the tariff applies only to fiberboard cartons. These stipulations do not rebut Conrail’s prima facie evidence of tariff violations because the applicable tariff, SWL 2005 FCT-2-H, by its own terms applies only to fiberboard cartons and encompasses within its reach shipments which contain containers other than just fiberboard cartons.
The inspection certificates introduced by Conrail required a ruling that it had made a prima facie showing of a tariff violation and since the contents of the certificate were not met by any evidence to the contrary, the facts therein recited must be taken as true and judgment is to be entered in favor of Conrail.
Finding for the defendant is vacated Judgment to be ordered for the plaintiff.

 The inspection certificates make reference to fiberboard boxes and not fiberboard cartons.

 The draft report shows that counsel agreed that tariff SWL 2005 FCT 2-H applied to the ten shipments at issue here. The judge’s findings of fact inadvertently made reference to Tariff 2005, Item 2700 ECT-2-H.