(82 South. 277)

Nos. 22180, 21707.

GULF REFINING CO. OF LOUISIANA v. CARROLL et al. CARROLL v. CARROLL. Appeal of GULF REFINING CO. OF LOUISIANA.

(March 31, 1919. Rehearing Denied June 12, 1919.)

*(Syllabus by Editorial Staff.)*

1. JUDGMENT ⬤⟞442 — SETTING ASIDE—COL-LUSIVENESS APPEARING OF RECORD.

Where sole complaint of plaintiff seeking to set aside a judgment in a suit by a father against a son to set aside and annul a sale of land was that the suit was collusive for the purpose of getting rid of an oil lease given by the son to plaintiff, the judgment must be affirmed, where collusiveness does not appear by the record in that suit.

2. TENANCY IN COMMON ⬤⟞49—RIGHT OF CO-TENANT TO GRANT OIL AND GAS LEASE—NE-CESSITY OF CONSENT OF LESSOR'S COTENANT.

Co-owners are owners of part and of the whole, and, since neither has exclusive right to any determinate part of the property, an owner of an undivided half of a tract of land has not the right to exploit the land for oil and gas by making a lease therefor without the consent, implied or express, of his co-owner, and cannot confer such right upon his lessee, for, although the lease may be valid as to lessor, it is void as to his co-owner.

O'Niell, J., dissenting.

Appeal from Eleventh Judicial District Court, Parish of Red River; W. T. Cunningham, Judge.

Suit by S. P. Carroll against M. J. Carroll, his son, in which a judgment was rendered for plaintiff dissolving a sale, and in which suit the Gulf Refining Company of Louisiana obtained an order of appeal, and another suit by the Gulf Refining Company of Louisiana against S. P. Carroll and son to annul the judgment in the first suit on the ground of collusive proceeding to get rid of an oil lease by the son to the company, in which plaintiff obtained a decree and defendants appealed, were consolidated on appeal. Judgment in the former case affirmed, and judgment in the latter case set aside, exception of no cause of action sustained, and case dismissed.

Alexander & Wilkinson, of Shreveport, for appellants.

D. Edward Greer, of Houston, Tex., Thigpen & Herold and Goldstein & Walker, all of Shreveport, and Nettles & O'Quin, of Coushatta, for appellee.

PROVOSTY, J. One of the defendants, S. P. Carroll, sold to his son and codefendant, M. J. Carroll, an undivided half of a plantation. The sale was on a credit; conditioned that the interest should be paid annually, and that the failure to meet promptly any one of its installments should mature the entire debt. The son executed on his undivided half an oil and mineral lease in favor of the plaintiff company. At that time the locality was an unproved oil field. Later, oil having been discovered in that neighborhood, and the lease having as

a consequence become a disadvantageous one to the lessor, he and his father sought to get rid of it by the son defaulting on the payment of interest, and the father bringing suit to dissolve the sale. Judgment was so rendered. The plaintiff company had not yet gone upon the land. When informed of the suit having been brought and said judgment rendered, it obtained an order of appeal from said judgment, and at the same time brought suit to annul it, on the ground that the suit in which it was rendered was a mere collusive proceeding to get rid of the lease. The trial court so decreed, and the defendants appealed. The two appeals have been consolidated, and are the matters now to be considered.

[1] The sole complaint of the plaintiff company against the judgment in the suit of S. P. Carroll v. M. J. Carroll being that the suit was collusive, and this collusiveness not appearing by the record in that suit, the said judgment must be affirmed, since the correctness of a judgment must obviously be determined from the record of the suit in which it has been rendered.

[2] In the suit of the plaintiff company against the two Carrolls, an exception of no cause of action, overruled below, should have been sustained. The suit is based, in last analysis, upon the right, supposedly derived from the lease in question, to go upon the land in question to exploit it for oil and gas. Now the owner of an undivided half of a tract of land has not the right to exploit the land for oil and gas without the consent, implied or express, of his co-owner, and not having this right himself he cannot confer it upon a lessee; and the plaintiff company has not alleged that it has the consent, implied or express, of S. P. Carroll for going upon this land to exploit it for oil and gas. On the contrary, the plaintiff company, by charging S. P. Carroll with having resorted to the devious means of a collusive suit for defeating the lease in question, has in effect alleged that this co-owner is opposed to the said lease being carried out.

Co-owners are owners par mi et par tout, of part and of the whole. Neither of two co-owners has the exclusive right to any determinate part of the common property. So true is this, that when, in the case of Martel v. Jennings-Heywood Oil Syndicate, 114 La. 903, 38 South. 612, this court was applied to by a co-owner to be placed in possession of his interest in the common property, the request had to be refused because such a thing was legally impossible. The court in that connection said:

"If plaintiffs' ownership bore upon a specific thing, they would most unquestionably be entitled to a writ of possession; but it bears only upon an undivided one-fifth interest; it exists only par mi et par tout; it is a mere ideal or abstract right; hence the court cannot put plaintiffs in the actual, corporeal possession of it. All the court can do is to recognize the right, and let plaintiffs make it good by the remedies which the law places at their disposal. Were the court to order the sheriff to put the plaintiffs in the actual, corporeal possession of this undivided one-fifth, the sheriff could execute the order only by putting plaintiffs in possession of the entire property; that is to say, by ousting the defendants from their four-fifths of the property. This, of course, cannot be done. Plaintiffs are entitled to the joint possession and control of the property, and if their co-owners will not yield to them, or they cannot agree as to the administration of the property, their recourse must be to the courts."

The same question came up incidentally on a subsequent appeal of the same case. Martel v. Jennings-Heywood Oil Syndicate, 115 La. 451, 39 South. 441. See, also, Gulf Refining Co. v. Hayne, 138 La. 558, 70 South. 509, L. R. A. 1916D, 1147, Ann. Cas. 1917D, 130, where the principle of said case is applied.

A co-owner may therefore oppose any attempt by his co-owners, or by a lessee of his co-owner, to exploit the common property for oil and gas.

The question is as old as the Roman Law:

"Sabinus in re communi neminem dominorum jure facere quicquam, invito altero, posse. Unde manifestum est prohibendi jus esse; in re enim potiorem esse prohibentis causam constat." Dig. L. 28, Communi Dividundo.

"According to Sabinus one of the co-owners of a thing in common can do nothing (in re) in or concerning the thing (invito altero) against the will of, or in opposition to, the other. Hence it is manifest that this other has the right to prohibit the doing of anything, for it is certain that the right of that one of the owners who makes opposition is the stronger."

From this source has been derived the maxims, "In re communi melior est conditio prohibentis"—a maxim meaning, "In common property the condition of the one prohibiting is the better,"—and "In re communi neminem dominorum jure facere quicquam, invito altero, posse," a maxim meaning "One coproprietor can exercise no authority over the common property against the will of the other." 22 Cyc. 1102. Or as the same maxim is more tersely expressed "Melior est prohibentis." In other words, either co-owner has a right of veto against the acts of the other. And it is that very legal situation which underlies the principle that no one can be compelled to remain in indivision; that any co-owner may at any time demand a partition.

"When there is indivision between several persons, each one of them possesses on the thing, in so far as concerns his or her share, all the rights compatible with the purely intellectual nature of this quota, and may exercise them unaided; on the other hand, no single one of these persons can confer rights on the entirety of the common property, or even on any specific part, without the consent of all the others." Aubry et Rau, vol. 2, par. 221, pp. 404, 405.

"Inasmuch as the right of each one of the joint owners consists in an ideal quota and not in any specific entity, no one of them may without the consent of the others exercise on the totality of the common property, nor on any physically determinate part of it, any material or juridical acts involving the exercise of the actual and immediate right of ownership." Carpentier and Du Saint, Rep. Droit Français, vo. Indivision, p. 152, No. 111.

And, again, same page, No. 118:

"Also from the same idea that the joint owner may dispose of only his quota in the common property, and may not confer rights on the property in its entirety, nor even on any physical determinate part, it results that one of the joint owners cannot make material changes in the common property without the consent of his co-owners."

Again, same page, No. 121:

"Any single one of the co-owners can prevent all innovations, however advantageous they might be, and however much desired by all the other co-owners; for each one is at liberty to maintain his right in the exact condition in which it is. In re communi melior est conditio prohibentis." Citing authorities.

Again, same book, page 153, No. 131:

"A joint owner may revendicate his ideal quota from a third possessor, for the purpose of having his right recognized. But he will not be able to require the property to be vacated, for this relief is allowed only when the revendication bears upon corporeal objects." Citing long list of authorities.

This last excerpt is exactly in line with the decision in Martel v. Jennings-Heywood Syndicate, supra.

Again, same volume, same page, No. 142:

"Mr. Zacharie, in declaring that the joint owner goes beyond his right when he leases the common property, decides that in such a case the other co-owner has good ground for attacking the contract. It is more exact to say that a lease entered into by one of the co-owners cannot be invoked as against the other co-owners, since, by reason of the indivision, the right of the lessee could not be exercised on the share of the lessor without at the same time being exercised on the shares of the other co-owners."

Again, same volume, p. 154, No. 161:

"The court could not impose upon the joint owners its own ideas as being what appeared to be best in the interest of all parties concerned. Nor could it, in order to get out of the

difficulty, appoint a provisional administrator. The courts have no more right to interfere in the exercise of the right of ownership when there are several co-owners than when there is but one. It would be a violation of the right of ownership. [Citing authorities.]

"It may be laid down as a principle that the co-owner of property held in indivision cannot lease it without the consent of his co-owners. The latter would have the right to cause to be annulled in its entirety a lease which had been entered into without their concurrence, for, as long as the indivision continues, each one of the joint owners has a right to the whole." Fuzier-Herman. Repertoire du Droit Français, vo. Bail, No. 192, citing Cassation, 4 Juin, 1844; Sirey, vol. 1, p. 723; Liege, 6 Aout, 1835; Journal du Palais, vol. of 1835; Merlin, Questions de Droit. vo. Location; Favard de Langlade, Rep. vo. Louage, § 1, par. 1, No. 2, Bis; Duranton, T. 17, No. 35; Duvergier, T. 1, No. 87; Troplong, T. 1, No. 100; Demolombe, T. 9, No. 447; Aubry et Rau, T. 4, No. 364, p. 466; Laurent, T. 25, No. 44; Guillouard, T. 1, No. 54; Agnel, No. 30.

"For the same reason they would have the right to cause the lease to be annulled even if it bore only upon the undivided interest of the lessor"—citing Bourjon. liv. 4, tit. 4, c. 1, § 3; Merlin, Questions de Droit, vo. Location, § 1, No. 2; Duranton T. 17, No. 35; Duvergier, No. 87; Zachareae, T. 3, p. 4, Troplong, No. 100, Laurent, loc. cit.

By all this is not meant that the lease is not valid as between the lessor and the lessee, nor that one may not validly lease property belonging to another, but what is meant is that such a lease is null in so far as the co-owner is concerned; on the same principle that the lease of the property of another, while valid as between the parties to the lease, is null in so far as this other is concerned. The idea is simply that neither one of the co-owners has any right to any particular part of the common estate, or to do anything upon it, to the exclusion of his co-owner. Using the instant case for illustration, if the lessee of M. J. Carroll, or M. J. Carroll himself, sought to bore a well on any particular part of the estate, S. P. Carroll would have the perfect right to oppose it, on the ground that the particular spot where the well is proposed to be bored belongs to him as much as to M. J. Carroll or his lessee, and that the latter are not entitled to the exclusive possession of it. The moment the co-owners cannot agree, the only recourse of either is to demand a partition. Any other doctrine would lead to armed conflict between the parties.

In the case of Lewis v. Klotz, 39 La. Ann. 263, 1 South. 539, the facts were as follows: After one of the three owners in indivision had mortgaged his one-third interest, the three owners joined in a lease, and this lease was recorded. Later the mortgage was foreclosed, and the mortgaged one-third interest was sold free of the lease. The purchaser at the sale then bought the interest of the two other co-owners, and, treating the lease as having been annulled in its entirety by the foreclosure sale, proceeded to take possession of the plantation with a lot of hay, corn, and seed cane on it belonging to the lessee. The court held that the lease had not been annulled as to the two-thirds, and that while this purchaser would have had the right to take possession of a one-third interest, he could not take possession of the whole.

The court does not explain how a one-third undivided interest is to be taken possession of, and we dare say would have been very much at a loss to give a satisfactory explanation, if called upon to do so. In that connection, see Martel v. Jennings-Heywood Oil Syndicate, 114 La. 903, 38 South. 612, and Gulf Refining Co. v. Hayne, 138 La. 558, 70 South. 509, L. R. A. 1916D, 1147, Ann. Cas. 1917D, 130, supra. In this Klotz Case the court lost sight of the fundamental principles hereinabove set forth. It did not reason out the matter, but based its decision entirely upon the cases of Becnel v. Becnel, 23 La. Ann. 150, and Balfour's Heirs v. Bal-

four, 33 La. Ann. 297, which are not at all in point, but whose doctrine is simply that a co-owner whose enjoyment of the common estate has not exceeded his proportional interest in the estate owes no rent or other accounting to his co-owner; which is very far from saying that any joint owner has an exclusive right to any determinate physical part of the common estate, or may have the exclusive possession or enjoyment of any physical part against the will of his co-owner—invito altero.

In Gulf Refining Co. v. Hayne, 138 La. 555, 70 South. 509, L. R. A. 1916D, 1147, Ann. Cas. 1917D, 130, supra, where an oil and mineral lease made by a part owner in indivision was held not to invest the lessee with the right to sue for a partition, the question of the validity of the lease was not raised or brought in any way to the attention of the court, and, needless to say, was not passed on. And the same may be said of the case of Spence v. Lucas, 138 La. 763, 70 South. 796, although in that case the court did, arguendo, recognize expressly the validity of the lease of an undivided interest, but it did so without the point now being considered having been made, and simply on the general and well-recognized proposition, or principle, that for the validity of a lease the lessor need not be owner of the property.

The judgment appealed from is set aside, the exception of no cause of action is sustained, and the suit of the plaintiff company in the appeal No. 22180 of the docket of this court is dismissed at the cost of the plaintiff company, and the judgment in the suit No. 21707 of the docket of this court is affirmed, appellant to pay the costs of the appeal.

O'NIELL, J., dissents for the reasons assigned in his dissenting opinion in Gulf Refining Co. v. Hayne, reported in 138 La. 555, 70 South. 512, L. R. A. 1916D, 1147, Ann. Cas. 1917D, 130.