ST. PAUL, Justice.
 

 In 1888 Jesse B. Roberts and Sallie Mays Roberts, bis wife, were the sole owners of a-certain 80 acres of land in Caddo parish, in the proportions of five-sixths to the husband and one-sixth to the wife; the wife having acquired her interest by inheritance from her father, Samuel W. Mays, the original patentee from the government, and the husband having acquired his interest by purchase from the widow and other (two) heirs of said patentee:
 

 I.
 

 On December 16, 1888, Jesse B. Roberts and his wife sold the land to one Elias Lake, and through mesne conveyances this title eventually passed to Albert Baldwin by deed from the heirs of J. P. Horner, dated June 17, 1897.
 

 We are not now concerned with this title. It may, or may not, have been lost by prescription ; but we will meet
 
 that
 
 issue only when (if ever) Albert Baldwin, or his heirs, are before us.
 

 II.
 

 On December 16, 1901, Jesse B. Roberts, alone, without the concurrence of his wife, again sold the whole property to the Black Bayou Lumber Company.
 

 The land has only small value for farming purposes, arid has never been cultivated. Its value lies principally, if not wholly, in its natural resources. To-day its natural resources consist of natural gas; it lies in the middle of a proven gas field of approximate
 
 *1027
 
 ly 2,000 acres. In 1901 its natural resources consisted of merchantable pine timber.
 

 Tbe lumber company cut off and carried away all the merchantable timber on the land, and built a tramway thereon which they, and those who afterwards acquired and operated their sawmill, used for some ten years or thereabout. Afterwards the land was inspected three or four'times a year to see that no one trespassed or committed any depredations thereon.
 

 III.
 

 On-July 2, 1907, the Black Bayou Lumber Company sold the lands to-Albert M. Gloyd, who was then married to Margaret Huckell.
 

 Margaret Huckell Gloyd died intestate April 8, 1908, leaving a number of collateral heirs.
 

 On May 10,1909, Albert M. Gloyd, widower as aforesaid, sold the lands to Louisiana Land, etc., Company; and the title thus acquired eventually passed to F. E. Gloyd by deed from S. M. Gloyd, dated April 19, 1932.
 

 This title, of course, covered only the
 
 half-interest
 
 of Albert M. Gloyd, as survivor in the community between himself and his deceased wife, Margaret Huckell Gloyd.
 

 IV.
 

 On August 29, 1932, F. E. Gloyd executed a mineral lease on the property to defendant; prior to which time he had acquired from certain heirs of Margaret Huckell Gloyd all their interest in the land, leaving only seven-fortieths interest therein outstanding in certain other heirs of herá.
 

 ■ And pursuant to this mineral lease defendant began drilling for gas on September -10, 1932. • -. - -. - - - '•
 

 V.
 

 On September 26, 1932, plaintiff acquired the outstanding seven-fortieths interest of the remaining heirs of Margaret Huckell' Gloyd.
 

 On September 29, 1932, plaintiff, as co-owner With defendant, brought this action to enjoin said defendant, its co-owner, from proceeding further with said drilling operations. In final result the trial judge refused to issue the injunction, and the case is now before this court on certiorari.
 

 VI.
 

 • Plaintiff relies for its right of action on the doctrine of Gulf Refining Co. v. Carroll, 145 La. 299, 302, 82 So. 277, 279, that a co-owner may oppose any attempt by his co-owner, or by a lessee of his co-owner, to exploit the common property for oil or gas (or other minerals), a doctrine “as old as the Roman Law”; under which “any single one of the co-owners can prevent all innovations, however advantageous they might be, and however much desired by all the other co-owners ; for each one is at liberty to maintain his right in the exact condition in which it is,” citing Carpentier and DuSaint, Repertoire de Droit Francais, verbo Indivision, No. 111; and “it may be laid down as a principle that the co-owner of property held in indivisión cannot lease it without the consent of his co-owners,” citing Fuzier-Herman, Repertoire du Droit Francais, verbo Bail, No. 192.
 

 Defendant relies on the
 
 opposite
 
 doctrine of the common law, that “a tenant in common could not.be guilty of committing waste or trespass against his co-tenants; * * * [and] in the absence of a statute changing
 
 *1029
 
 the rule of the common law, one tenant in common of land may
 
 go
 
 upon it, sink a well, and produce oil and gas therefrom without the consent of the co-tenants.
 
 Their
 
 remedy is partition. In most of the states, however, by statute, the action of one tenant in common in operating the joint property, especially where the mines had not been previously opened, is waste as to the co-tenants, when done without their consent, and
 
 may he enjoined.
 
 (Italics by this writer.) Mills and Willingham on the Law of Oil and Gas, § 177, p. 265.
 

 Since, in this state also, “when parties own lands or leases or other property in common and cannot agree between themselves, the obvious course for them to follow is to demand a partition thereof between them (Allies Oil Co. v. Ayers, 152 La. 19, 92 So. 720)”, and
 
 injunction
 
 is a proper proceeding to prevent what in this state amounts to “waste as to co-tenants” (Cotten v. Christen, 110 La. 444, 34 So. 597), we see no great difference (or even real difference at all) between the two systems; and hence we prefer to follow our own precedents rather than the rule stated by a court of another jurisdiction, that “the peculiar circumstances of a cotenancy in land upon which oil is discovered warrant one co-tenant to proceed and utilize the oil, without the necessity of the other cotenants concurring [because the land might be drained of its oil by wells on adjoining property].” Burnham v. Hardy Oil Co. (Tex. Civ. App.) 147 S. W. 330, 335.
 

 VII.
 

 Defendant refers to the outstanding Baldwin title. We pretermit, as we have said, any present consideration of that title, for “it is well settled, that, if either the pleadings ■ or the evidence show that the parties trace their titles to the same source, neither will be permitted to attack the title of their cojnmon author, and that a party cannot controvert the title of one under whom he claims.” Consolidated-P. Oil Corp’n v. Standard Oil Co., 158 La. 982, 105 So. 36, 37. Here both plaintiff and defendant claim through Albert M. Gloyd; the defendant by purchase (and mesne conveyances) from Gloyd, himself, the plaintiff by purchase from the heirs of his wife. But the only title which Gloyd had was through his purchase from the Black Bayou Lumb.er Company, during his .marriage ; and that purchase vested ipso facto in her a half interest in the property, even though subject to his authority as head óf the community; and
 
 his
 
 title was also her title. Rev. Civ. Code, art. 2402; Phillips v. Phillips, 160 La. 813, 107 So. 584; Dixon v. Dixon’s Executors, 4 La. 188, 23 Am. Dec. 478. Of. Succession of Marsal, 118 La. 212, 42 So. 778.
 

 VIII.
 

 We are therefore of opinion that the injunction herein sought should issue and defendant be relegated to its action for a partition.
 

 Of course, we have not concerned ourselves with plaintiff’s motives in seeking the injunction any more than with its urgent insistence upon speedy action. We have considered only the legal rights of the parties, and given the case that deliberate consideration to which we thought it was entitled.
 

 Decree.
 

 For the reasons assigned the rule herein issued is made peremptory and it' is now
 
 *1031
 
 ordered that an injunction issue herein as prayed for, upon bond to be fixed by the district judge; defendant to pay all costs.
 

 O’NIELL, C. J., dissents on the ground that this case is not one in which the plaintiff is admitted to be a part owner of the property, but is one in which the district judge found this claim so doubtful that the judge, in his discretion, refused to grant a preliminary injunction; the land being in the midst of a proven gas field, and being drained of its gas.