92 So.2d 583

**SUN OIL COMPANY et al.**

**v.**

**STATE MINERAL BOARD, Miss Alice
J. Miller (Intervenor).**

No. 42609.

Dec. 10, 1956.

Rehearing Denied Jan. 21, 1957.

James C. Henriques, Jr., New Orleans,
for intervenor-appellant.

George C. Schoenberger, Jr., Tinsley Gilmer, New Orleans, amici curiae.

King, Anderson & Swift, Lake Charles, Breazeale, Sachse & Wilson, Baton Rouge, Heller & Heller, New Orleans, for plaintiff-appellee.

McCALEB, Justice.

This suit involves the constitutionality of Act 513 of 1952 (R.S. 30:181–188) which authorizes the State Mineral Board to execute mineral leases on lands owned in indivision by 500 or more persons for the benefit of all the owners thereof, when any 50 or more of the co-owners of said property have petitioned the Board to lease the subject property. Upon receiving such a request the Board has authority to follow the same procedure used by it in the leasing of state lands for mineral development. The lease shall not provide any less than a $\frac{1}{8}$ royalty for the co-owners of the land and, when signed by the Board, shall be binding upon all the co-owners. The Act allows a 10% deduction by the Board to defray the costs and expenses incident to its duties under the Act.

Pursuant to the provisions of Act 513 of 1952, a petition was filed by 50 or more persons alleged to be co-owners in indivision, along with more than 500 other persons, of certain property described in the petition as:

"All of that portion of Section 19, Township 17 South, Range 11 East, lying east of Doctor's Bayou in St. Mary Parish, Louisiana, containing 1218.75 acres."

The State Mineral Board proceeded to advertise for leases on said land and, on December 14, 1953, Belle Isle Corporation and Sun Oil Company filed this suit, seeking a temporary restraining order and a preliminary and permanent injunction against the Board to prevent it from proceeding under Act 513 of 1952. They aver in their petition that Belle Isle Corporation, as lessor, entered into a mineral lease with Sun Oil Company, as lessee, that affects, among other lands, the property sought to be leased by the State Mineral Board and charge that such leasing by the Board would be violative of various provisions of the Federal and Louisiana Constitutions, including the due process and equal protection clauses and the prohibitions against ex post facto laws and laws impairing the obligation of contracts.

A temporary restraining order was granted along with a rule to show cause why a preliminary injunction should not issue. Prior to a hearing on the rule, Miss Alice J. Miller and Mrs. Therese G. Rainold, two of the co-owners who signed the request that the State Mineral Board lease the above-described land, intervened in the case. They allege the lease between

Belle Isle Corporation and Sun Oil Company to be an absolute nullity insofar as the land in question is concerned and further assert that Belle Isle Corporation and Sun Oil Company, as mineral lessor and lessee, respectively, of large tracts of land adjacent to the land in question, are seeking to prevent the leasing of the latter property by the State Mineral Board in order to be in a position to drain the minerals from under said property

After several continuances, during which time the temporary restraining order was kept in effect, a hearing was had on the rule for a preliminary injunction. By agreement, the hearing was to be considered as a hearing for a permanent as well as for a preliminary injunction.

The trial judge, finding Act 513 of 1952 to contravene the Fifth and Fourteenth Amendments of the Constitution of the United States and Article 1, Section 2 of the Louisiana Constitution, in that it affected the contract rights of Belle Isle Corporation and Sun Oil Company, declared said Act unconstitutional and permanently enjoined the State Mineral Board from proceeding thereunder. From this judgment only Alice J. Miller, one of the intervenors, has appealed.

Before considering the constitutionality vel non of Act 513 of 1952, it will first be necessary to dispose of certain preliminary matters.

The trial judge was of the opinion that intervenors could not make a collateral attack upon the lease contract existing between co-plaintiffs in view of the fact that they had no legal interest therein.

While this ruling was not prejudicial to appellant since the trial judge went on to decide the case on constitutional grounds, we feel it to be so manifestly erroneous as to merit comment. Article 390 of the Code of Practice provides that, "in order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit, or an interest opposed to both". It is quite obvious that the instant intervenors have a most substantial interest in the success of defendant State Mineral Board in this proceeding since, unless Act 513 of 1952 is held to be constitutional and the Board permitted to lease their property, they will, for all practical purposes, be denied the opportunity of having mineral exploration conducted on the land. And it follows that they are entitled to resist the demands of co-plaintiffs, who are asserting that, by reason of their lease contract, the statute is rendered null. Thus, we do not hesitate in declaring that appellant had sufficient interest to intervene in this proceeding [1] and to assail the validity of co-plaintiffs' lease.

1. And, it might be added, she could have appealed from the lower court judgment even had she not intervened since Article 571 of the Code of Practice gives

We next consider the precise legal effect of the lease between Belle Isle Corporation and the Sun Oil Company which was executed May 1, 1935. Belle Isle Corporation, as owner of an undivided $13\!/\!144$ plus an undivided $428\!/\!864$ of an .045798 interest in the land described earlier in this opinion, entered into a mineral lease with the Sun Oil Company covering this undivided interest and also including certain other lands in the vicinity. There has been no exploration by the lessee of the land involved in this litigation—it is stipulated that there has been production on some of the other lands included in the lease.

The trial judge found the lease of this undivided interest to be valid as to the parties thereto, rejecting appellant's contention that the lease, being impossible of performance, is null and void under the provisions of Article 1891 of the Civil Code.[2]

This Court has recognized that, as between the parties, the lease of mineral interests owned in indivision with others is valid since one may validly lease property belonging to another. Spence v. Lucas, 138 La. 763, 70 So. 796; Gulf Refining Co. of Louisiana v. Carroll, 145 La. 299, 82 So. 277 and Articles 2681 and 2682 of the Civil Code.

However, it is well established in the cited cases and in the many authorities following them, see Amerada Petroleum Corporation v. Reese, 195 La. 359, 196 So. 558 and cases there cited and Amerada Petroleum Corporation v. Murphy, 204 La. 721, 16 So.2d 244, that such a lease is null insofar as the other co-owners are concerned and a co-owner may oppose any attempt by his co-owners, or by a lessee of his co-owners, to exploit the common property for oil and gas, the theory being that co-owners are owners par mi et par tout, of part and of the whole, and no co-owner has the exclusive right to any determinate part of the common property.[3]

the right of appeal "not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to such suit, when such third persons allege that they have been aggrieved by the judgment".

2. This article reads as follows: "The object of a contract must be possible, by which is meant physically or morally possible. The possibility must be determined, not by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it."

3. But compare United Gas Public Service Co. v. Arkansas-Louisiana Pipe Line Co., 176 La. 1024, 147 So. 66, which may not appear to be entirely concordant. There, the Court upheld the trial judge's refusal to grant an injunction to prevent the extraction of gas by a mineral lessee of one of the co-owners since such drilling was apparently necessary to prevent the minerals from being drained off by the other co-owner (plaintiff), who had several producing gas wells adjoining the area in controversy. This decision is founded on the premise that a co-owner who is guilty of unlawful drainage of

With this brief background, we will examine co-plaintiffs' contention that the leasing of the land in question by the State Mineral Board would obliterate the lease existing between them and would thereby effect an unconstitutional impairment of contract obligations and deprivation of vested rights.

Conceding that the action proposed by the State Mineral Board under Act 513 of 1952 would extinguish the lease between co-plaintiffs, insofar as it covers the land above described, we find it difficult to perceive that any obligation under the lease will be impaired or that a valid right will be divested.

The most accurate description of co-plaintiffs' lease is that it was an executory contract dependent for its operation upon a suspensive condition, viz., that Sun Oil Company, as lessee, obtain leases or at least acquiescence from every other co-owner of the land in question.[4] Neither the leases nor the consent have ever been procured and it is clear that no obligation has ever come into being. Article 2043 of the Civil Code provides:

"The obligation contracted on a suspensive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.

"In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known."

Thus, there is no existing contractual obligation of either plaintiff that can be impaired by the machinery of Act 513 of 1952 —for it is clear that the parties neither contemplated that Belle Isle Corporation would be obliged, as lessor, to deliver the leased premises until Sun Oil Company obtained a like lease or consent from each of the remaining 800 odd known co-owners, see Buillard v. Davis, 201 La. 116, 9 So.2d 479, nor that Sun Oil Company would be obliged to develop the property owned in indivision.

Nor do we discover any substance in the argument that the Act operates as a divestiture of vested rights. The lease in question vests no rights in either party since it confers neither rights nor obliga-

---

minerals may not resort to the equitable remedy of injunction against his co-owner who is engaged in drilling offset wells to protect the common property from exploitation. Thus, the case is distinguishable from Gulf Refining Co. of Louisiana v. Carroll on its facts and is not in conflict therewith.

4. Compare this situation with Article 738 of the Civil Code which states: "The coproprietor of an undivided estate can not impose a servitude thereon, without the consent of his coproprietor. The contract of servitude, however, is not null; its execution is suspended until the consent of the coproprietor is given."

tions until the happening of the suspensive condition previously discussed for, as above stated, prior to this time Belle Isle Corporation could not deliver possession of the premises and Sun Oil Company is precluded from going on the land to explore for minerals. Gulf Refining Co. of Louisiana v. Carroll, supra.

The contention of co-plaintiffs that the statute operates to destroy their vested rights is based on certain observations made by the court in Spence v. Lucas and Gulf Refining Co. of Louisiana v. Carroll to the effect that, whereas leases or property owned in indivision are ineffective unless all co-owners give their consent, they are valid and enforceable between the subscribing parties. An examination of the cited cases shows that the remarks relied on were appropriate to the facts involved in Spence v. Lucas, where the lessor executed a mineral lease of the *whole* property although she only owned an undivided one-half interest therein. Hence, the court rightly concluded there that, although the lease was invalid and unenforceable as to the lessor's co-owners, it was binding on the lessor under Article 2682 of the Civil Code.[5]

On the other hand, the mineral lessor in Gulf Refining Co. of Louisiana v. Carroll did not lease the property of another but only his own undivided one-half interest in the property. Consequently, the oil company in that case (like this one) was charged with knowledge that delivery was not contemplated and could not be effected without the consent of the other co-owner. Therefore, the statement of the court that the lease was a valid contract and enforceable between the parties (which, incidentally, was obiter dicta) was incorrect as that observation was founded on the principle, inapposite to the facts there presented, that a lease of the property of another, while null as to the owner, is binding on the parties to the contract.

The lease in the case at bar had no practical effect whatsoever in view of the manifest improbability that Sun Oil Company would have been able to obtain the consent of the legion of other co-owners prior to the expiration of the time when it could go on the land and explore. It was stipulated at the trial that the lease (which has not been offered in evidence) is dated May 1, 1935 and comprises lands owned by Belle Isle Corporation other than its fractional interest in the property involved herein and it was further stipulated that this lease has been kept alive by production obtained from part of the leased property. It is obvious, we think, that the production secured from the other property wholly owned by Belle Isle Corporation could not serve to hold the lease as to the land in the

5. It provides: "He who lets out the property of another, warrants the enjoyment of it against the claim of the owner".

instant suit for the simple reason that the lease has never become effective as to that property and could not have had any legal effect, even as between the parties thereto, unless the consent of the various co-owners had been obtained within the primary term, which expired over fifteen years ago.[6]

Indeed, when we examine the respective positions occupied by Belle Isle Corporation and Sun Oil Company in these proceedings, we are impelled to conclude that they are strikingly anomalous. The former, as a co-owner of the land involved in this litigation, is vigorously assailing the constitutionality of an act that provides the only practical method by which it can realize any profit from the minerals that may underly this land. And Sun Oil Company, in its strenuous effort to maintain the existence of the nugatory lease between it and Belle Isle Corporation affecting this property, is opposing the very act which would give it an opportunity to acquire a valid lease on the property which they purport to be so anxious to explore.

Finally, even were we to assume the present existence of private, though nebulous, contractual rights between Belle Isle Corporation and Sun Oil Company, it is patent that such rights are subordinate to the valid exercise by the state of its police powers. And it has long since been established that the state's police powers justify measures for the regulation of production of oil and gas and for the conservation of these valuable deposits. Ohio Oil Co. v. State of Indiana, 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729. It was on this basis that our present conservation statute, Act 157 of 1940 (now R.S. 30:1 et seq.), has been held to be nonviolative of any provisions of either the State or Federal Constitution, see Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495, appeal dismissed for want of a substantial Federal question, 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5, and Crichton v. Lee, 209 La. 561, 25 So.2d 229, and it is well settled that, where valid orders of the Commissioner of Conservation are in conflict with private contractual rights, the latter must yield and are superseded by the former. Everett v. Phillips Petroleum Co., 218 La. 835, 51 So.2d 87 (and cases cited therein) and Smith v. Holt, 223 La. 821, 67 So.2d 93.

The only function of Act 513 of 1952 is to provide a method for the recovery of minerals in situations where, due to the large number of owners in indivision, exploration and production would otherwise be a practical impossibility. Such a measure, designed to benefit the state and all the co-owners affected, is clearly a valid exercise of the police power, much the same

6.  We assume that the lease is an ordinary mineral lease having a primary term of five years.

as is an order of the Commissioner of Conservation establishing compulsory drilling units, and private rights succumb thereto.

The judgment appealed from is reversed and the suit is dismissed at plaintiffs' costs.

HAMITER, J., concurs in the decree.

On Application for Rehearing.

PER CURIAM.

In briefs filed on application for rehearing issue was taken to certain statements in our opinion in this case concerning vested rights, impairment of the obligation of contracts, and the validity of the lease between Belle Isle and Sun Oil.

█ Upon further consideration we have decided that a discussion of these issues is unnecessary to a decision in this case, and we now prefer to rest our decision solely on the basis that Act 513 of 1952 is constitutional because it is a valid exercise by the state of its police power.

The application for rehearing is denied.

McCALEB, J., is of the belief that all views expressed in the original opinion, to which he adheres, are responsive to the issues presented in the case.