340 So.2d 638 (1976)
GMB GAS CORPORATION, Plaintiff-Appellee,
v.
George Moody COX et ux., Defendants-Appellants.
No. 13062.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1976.
*639 Kidd, Katz & Strickler by George M. Strickler, Jr., Monroe, for defendants-appellants.
Brown, Wicker & Lee by Ralph J. Wicker, Monroe, for plaintiff-appellee.
Before BOLIN, PRICE and MARVIN, JJ.
PRICE, Judge.
This is an appeal from the judgment rejecting the application of the co-owner of a mineral servitude for an injunction to prevent operations under a lease granted by his co-owner without appellants' consent.
On July 1, 1968, George M. Cox, joined by his wife, Irma Cox, executed an agreement to partition a tract of 400 acres of land in Ouachita Parish owned in indivision with Mrs. Medorah H. Sanders, Thomas A. Sanders, Jr., and Jerry H. Sanders. The agreement excluded the minerals from the partition by the following provision:
It is understood and agreed, however, that no partition is made of the mineral interest and the parties shall continue to remain as owners in indivision with respect to the oil, gas and other minerals in, on and under the property herein partitioned.
Subsequent to the partition, the Sanders executed a mineral lease to plaintiff, GMB Gas Corporation, covering the entire 400 acre tract. Cox was not a party to the lease and refused to allow GMB to conduct exploratory operations on the part of the land received by him in the partition.
GMB filed suit for an injunction against Cox's interference. Cox reconvened for judgment declaring the lease invalid and requesting an injunction forbidding further operations by GMB on any part of the 400 acre tract in which he is co-owner of the mineral servitude.
An exception of no right or cause of action filed by Cox to the demands of GMB was overruled and his application for an injunction against GMB was denied.
This appeal concerns only the refusal of the trial court to grant the injunction sought by Cox.
The issue is whether the lessee of a co-owner of a mineral servitude created prior to the enactment of the Mineral Code may conduct operations on lands subject to the servitude without the consent of the other co-owner.
The trial court held that GMB, as the lessee of the owner of a fractional interest in a mineral servitude, had an absolute real right to explore the affected property relying on the decisions in Huckabay v. Texas Company, 227 La. 191, 78 So.2d 829 (La. 1955); Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1 (La.1931); and Union Sulphur Company, Inc. v. Lognion, 26 So.2d 845 (La.App. 1st Cir. 1946).
There are two areas of factual distinction in the cases relied on by the trial court which make them inapposite to the instant case. First, these cases were primarily concerned with owners of fractional mineral interests seeking to get their share of proceeds without paying their pro rata part of development and production costs. Second, in Huckabay, Clark, and Union Sulphur *640 there was no co-owner of a single mineral servitude as we find exists in the case under consideration. We recognize that prior to the Mineral Code, there have been doubts expressed by some legal authorities that a single servitude could be created in a partition by co-owners as this is contrary to the traditional concept that a landowner may not fractionate his title in favor of himself. See 28 La.L.Rev. 367 (1968). The only case in which this question was presented was decided on a construction of the partition agreement holding the parties intended to create separate servitudes on the tracts received by each. Whitehall Oil Co., Inc. v. Heard, 197 So.2d 672 (La.App. 3rd Cir. 1967). However, the court in Whitehall indicated a single servitude would legally be permissible under a partition agreement which clearly shows such to be the true intent of the parties.
The rights in dispute were created prior to the January 1, 1975, effective date of the Mineral Code. Although the Code clearly resolves the issue presented in this case, there may be constitutional questions presented in giving retroactive effect to the provisions of the Code that affect vested rights. To establish stability in this area of the law, the provisions of the Mineral Code should be followed on pre-code issues which have not been clearly resolved by the jurisprudence. This approach to the problem is supported by the pronounced intent in the introduction to the Code by the Louisiana Law Institute that it is intended to be a codification and clarification of the already existing body of jurisprudence relating to mineral ownership in this state. The Code further represents an expression of the legislature as to what it considered the law should be in those areas where the courts had not specifically ruled. Articles 66 and 67 of the Code provide:
The owners of several contiguous tracts of land may establish a single mineral servitude in favor of one or more of them or of a third party.
Co-owners of land constituting a continuous whole may partition it and reserve a single mineral servitude in favor of one or more of them.
The language of the partition agreement adopted by Cox and Sanders leaves no doubt that they intended to own the minerals under the entire 400 acre tract in indivision and to create a single mineral servitude for this purpose. We, therefore, find this to be the effect of their agreement.
There have been no cases holding that the consent of both co-owners of a mineral servitude is necessary to grant an enforceable lease under a true co-owner concept. The most analogous situation is posed in Gulf Refining Co. v. Carroll, 145 La. 299, 82 So. 277 (La.1919). The court there held a mineral lease granted by one co-owner of land did not create a right of mineral exploration against a non-consenting co-owner. A similar result was reached in Sun Oil Co. v. State Mineral Board, 231 La. 689, 92 So.2d 583 (La.1956); Amerada Petroleum Corp. v. Murphy, 204 La. 721, 16 So.2d 244 (La.1943); Amerada Petroleum Corp. v. Reese, 195 La. 359, 196 So. 558 (La.1940). These latter cases held the lease valid between the lessor and lessee, but unenforceable against the co-owners of the land who did not consent. The cases of Carroll, Murphy, Sun Oil, and Reese are consistent with the provisions of Article 175 of the Mineral Code which provides:
A co-owner of a mineral servitude may not conduct operations on the property subject to the servitude without the consent of the other co-owner.
Article 176 provides an exception to Article 175 in instances where a co-owner acts without the consent of his co-owner to prevent waste or extinction of the servitude. There is no evidence presented here which would activate the provisions of this article.
Although there are some factual distinctions in the instant case from Carroll, Murphy, Sun Oil, and Reese, these cases were decided on principles which are more analogous to the issue now before us than the line of cases relied on by the trial court. For that reason, and to create a consistent pattern of mineral law as to rights established prior to the Code, we deem it appropriate *641 to adopt the rule provided by Article 175 as the law governing this case.
The Sanders parties who are co-owners with Cox are not without a remedy as contended by GMB, as a partition of the mineral servitude is authorized by Article 172 of the Code.
In summary, we hold the lease to GMB does not authorize the lessee to conduct operations for mineral development without the consent of the co-owners of the mineral servitude. Cox is entitled to the injunctive relief sought to prevent the exploration and development without his consent. The judgment is reversed, and the case is remanded to the district court for the issuance of the injunctive relief prayed for, and for further proceedings in accord with law. Costs of these proceedings are assessed to appellee.
MARVIN, J., concurs with written reasons.
MARVIN, Judge (concurring).
In effect, we are holding the Mineral Code (R.S. 31, Act 50 of 1974, effective January 1, 1975) to be retroactive under the guise of promoting stability or uniformity, notwithstanding R.S. 31:214:
"The provisions of this Code shall apply to all mineral rights, including those existing on the effective date hereof; but no provision may be applied to divest already vested rights or to impair the obligation of contracts." (Emphasis Ours).
I agree, however, that it is desirable to have stability in property or mineral law, although I have some doubt that we are not divesting the rights of, or impairing the obligation, between the parties (Sanders, the Sanders' lessee, and Cox) as they existed prior to the adoption of the mineral code.
The partition agreement resulted in Cox receiving 140 acres and Sanders receiving 260 acres. The majority has found the effect of the agreement to create a single mineral servitude under the 400 acres, owned in indivision by Cox and Sanders. While this result is possible under the new Mineral Code, I have some reservations that it was possible before, even assuming the found "intent" of the parties. See Justice Tate's opinion, Whitehall Oil Company v. Heard, 197 So.2d 672 (La.App. 3d Cir. 1967), writ refused.
These problems, and others which concern me, however, are not created by this opinion, but by the Mineral Code.[1]
Where the pre-Mineral Code authorities have not established a rule of mineral law, certainly the courts should adopt the Mineral Code approach to maintain some continuity *642 and stability for resolution of pre- and post-code issues.
I concur in the result.
NOTES
[1] Our mineral law evolved from application of civilian property principles, respect for which was purposely maintained by the courts and the scholars commenting thereon. See generally Frost-Johnson Lumber Co. v. Sailings' Heirs, 150 La. 756, 91 So. 207 (1922), cases and Law Reviews since discussing application and extension of Civil Code principles to the mineral servitude and rights deriving thereunder. See also Daggett, Louisiana Mineral Rights (Rev.Ed. 1949).

R.S. 31:175 apparently was intended to read just the opposite of its wording, which would perhaps have been more in harmony with pre-Mineral Code cases. See for instance the comments under sections 176 and 177, which respectively, in part, state:
". . . However, subsequent cases indicate that a co-owner of land may grant a valid lease, but it may not be exercised without consent of the remaining co-owners. . . This latter rule will not be applicable to mineral servitudes under Article 175, which gives an independent right of operation to each co-owner of a mineral servitude." R.S. 31:176 (Citations omitted).
"In prohibiting operation without consent of all co-owners of a mineral lease, Article 177 applies the established rule applicable to co-owners of land . . . This rule has not been applied to mineral servitudes for reasons set forth in the comment following Article 175; nor has it been applied to mineral royalties for the reason that the royalty is not an operating interest." R.S. 31:177 (Citations omitted and Emphasis Ours).
The Comment under R.S. 31:175, however, states that the article "preserves what is understood to be the present law." Obviously there was or is serious question among the redactors as to the "present law," if the quoted comments are not misprints or misplaced. Compare further Articles 171, 174, 176 and 177 and comments thereunder. Compare also the comments under Article 168 with Article 172.