# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-30084

———————

United States Court of Appeals
Fifth Circuit

**FILED**

February 16, 2024

Lyle W. Cayce
Clerk

WARREN G. TREME; AIMS GROUP, INCORPORATED; FRED KINSLEY; AJSJS DEVELOPMENT, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

ST. JOHN THE BAPTIST PARISH COUNCIL; ST. JOHN THE BAPTIST PARISH,

*Defendants—Appellees*,

———————————————————————

AJSJS DEVELOPMENT, L.L.C., *in their individual capacity*; WARREN G. TREME, *in his individual capacity*; AIMS GROUP, INCORPORATED, *in their individual capacity*; FRED KINSLEY, *in his individual capacity*,

*Plaintiffs—Appellants*,

*versus*

ST. JOHN THE BAPTIST PARISH; ST. JOHN THE BAPTIST PARISH COUNCIL,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana

USDC Nos. 2:21-CV-1607, 2:22-CV-19

_____

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

The question on appeal is whether a mineral lease came into effect under Louisiana law such that the Plaintiffs have standing to pursue constitutional takings claims against a local government. The district court held that the mineral lease is not yet in effect. We AFFIRM but MODIFY the district court's judgment to be a dismissal without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2018, Dr. Christy Montegut and his siblings leased minerals on a tract of land they owned to Warren G. Treme, in his capacity as a member of AJSJS Development, LLC. The mineral lease covered a tract in St. John the Baptist Parish, Louisiana ("Montegut Tract"). AJSJS then allegedly joined a joint venture formed in 2010 between Treme, AIMS Group, Inc., and Fred Kinsley. The joint venture was formed "for the purpose of mining, excavating, removing and processing clay material from the" Montegut Tract and to make the clay material available to the U.S. Army Corps of Engineers "for the construction of the West Shore Lake Pontchartrain Hurricane and Storm Damage Risk Reduction Project."

There is some dispute as to whether this joint venture legally exists, but we interpret the district court's decision as assuming it does. Whether there is a joint venture does not affect our analysis, though, so we need not consider it.[1] For simplicity, we will refer to AJSJS, Treme, AIMS Group,

_____

[1] In district court, the Plaintiffs filed suit as a joint venture on August 25, 2021, and then in their individual capacities on January 5, 2022. Those cases were consolidated on February 10, 2022, and the Plaintiffs appeal both as a joint venture and in their individual capacities.

and Kinsley, both as a joint venture and in their individual capacities, as the Plaintiffs, unless otherwise specified.

To extract clay from the Montegut Tract, the Plaintiffs needed a zoning classification change. Since St. John the Baptist Parish's zoning law became effective in 1984, the Montegut Tract has been zoned "Residential District One" ("R-1"). This zoning category permits single-family residences, greenhouses, churches, schools, and similar uses. *See* CODE OF ORDINANCES OF ST. JOHN THE BAPTIST PARISH, LA. § 113-180. To conduct the mining and excavation activities contemplated in the mineral lease, the zoning needed to be changed to "Rural," which allows "[e]xcavation of minerals, or materials including, but not limited to, sand, gravel, rock, clay, ores, liquid or gaseous fossil, fuels." § 113-165(17) (2024). A conditional use permit would also be needed. *Id.*

According to the Plaintiffs, between September 2018 and July 2020 and before any governmental approvals were obtained, they conducted numerous surveys, tests, and exploratory activities on the Montegut Tract to prepare bids for the Corps of Engineers Project. In June 2020, Dr. Montegut filed a Change of Zoning District Application to rezone the Montegut Tract from R-1 to Rural. Although the application was consistent with zoning district requirements and the Parish's 2014 Comprehensive Plan[2] for zoning classifications, the Parish's Planning Commission heard numerous complaints from affected residents who opposed the zoning change. The Planning Commission recommended the Parish Council deny the application, a recommendation the Council ultimately accepted.

---

[2] Under Louisiana law, Planning Commissions, who have authority over zoning, must promulgate zoning regulations consistent with a "comprehensive plan" for zoning. LA. R.S. 33:4723.

No. 23-30084

After Dr. Montegut's rezoning application was denied, the Plaintiffs sued the Parish and the Council (collectively, "Defendants") on August 25, 2021, in federal district court for the Eastern District of Louisiana. The Plaintiffs alleged the denial of the rezoning application constituted a regulatory taking without compensation in violation of the United States and Louisiana Constitutions. They also alleged violations of procedural and substantive due process and equal protection rights under the Fourteenth Amendment. In February 2022, the parties agreed to stay and administratively close the case to allow Dr. Montegut to file new rezoning and permitting applications.[3] Any party could move to reopen the case by August 23, 2022, if the Council's decision on the refiled applications did not resolve the matter.

Dr. Montegut filed the new applications on March 9, 2022. After receiving additional public comments, the Planning Commission voted on June 27, 2022, to approve the applications with a 4-3 vote (with one commissioner abstaining). The Council, however, later voted on July 12, 2022, to deny the new applications with a 6-2 vote (with one member abstaining).[4] The Defendants promptly filed an unopposed motion to lift the stay and reopen the case, which was granted.

In September 2022, the Plaintiffs filed an amended complaint asserting the same facts as in their original complaint. The Plaintiffs claimed they were not given an opportunity to be heard before the Council voted on

---

[3] Dr. Montegut has not been a party to this litigation.

[4] The Planning Commission is generally composed of nine members, CODE OF ORDINANCES OF ST. JOHN THE BAPTIST PARISH, LA. § 101-24(a), but Louisiana law allows between five and nine members to make up the Commission, LA. R.S. 33:103(A). The Council, a separate entity, is composed of nine elected members. ST. JOHN THE BAPTIST PARISH CHARTER art. III, § A(1)(a).

No. 23-30084

the original application, and the Council decided never to grant the applications as long as AJSJS was involved. The Plaintiffs further alleged the decisions to deny the applications were arbitrary and capricious because the Council allegedly informed a competitor of the Plaintiffs that it would approve rezoning if the competitor was able to purchase the mineral lease from AJSJS. The Plaintiffs sought $164 million as compensation for the purported regulatory taking and denial of due process and equal protection.

In February 2023, the district court entered a summary judgment for the Defendants. The district court determined none of the Plaintiffs had standing to bring a takings claim because the mineral lease by its own terms was not yet in effect. This meant the Plaintiffs had no vested property interest in the Montegut Tract as required to have standing for takings claims. The district court also rejected the Plaintiffs' alternative theory that the mineral lease would become effective when they "commence[d] operations" and that the preparatory activities they conducted between 2018 and 2020 were sufficient under Louisiana law. The district court dismissed the suit with prejudice, and the Plaintiffs timely appealed.

## DISCUSSION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291.

"We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Huskey v. Jones*, 45 F.4th 827, 830 (5th Cir. 2022) (citation omitted). Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We view all facts and inferences "in the light most favorable to the nonmoving party." *Huskey*, 45 F.4th at 830 (citation omitted).

No. 23-30084

When interpreting a lease, our review is *de novo*, and we apply the law "as interpreted by the state's highest court." *Ironshore Specialty Ins. Co. v. Aspen Underwriting, Ltd.*, 788 F.3d 456, 459 (5th Cir. 2015) (citation omitted). When the state's highest court has not directly ruled on the issue, we make an "*Erie* guess" and follow the rule we believe the state court would adopt. *Id.*

I. *Background principles*

Before applying the legal principles on which this case turns, namely, standing and Louisiana contract law, we provide some background.

a. *Standing*

To assert a takings claim, the Plaintiffs must demonstrate they have a "protectable property interest" under state law in the property at issue. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). Louisiana law recognizes property interests in leases and that any "substantial interference" with such rights may constitute a taking within the meaning of the state and federal constitutions. *State ex rel. Dep't of Transp. & Dev. v. Chambers Inv. Co.*, 595 So. 2d 598, 602 (La. 1992). Article III standing also requires that plaintiffs have an interest in the property at the time of the alleged taking. *See Severance v. Patterson*, 566 F.3d 490, 495–96 (5th Cir. 2009). Whether the Plaintiffs have standing here depends on whether they had a property interest in the Montegut Tract when they filed suit and continuing until now. To resolve the arguments about standing in this case, we must interpret the language of the mineral lease to determine whether it was effective at the time the Council denied the rezoning and conditional use applications.

6

b.    *Mineral leases*

As a general principle, when interpreting a lease or other contract under Louisiana law, "[t]he words of a contract must be given their generally prevailing meaning" unless they are terms of art or technical terms, in which case they are given their technical meaning. LA. CIV. CODE art. 2047. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." art. 2046. If certain provisions are susceptible to various meanings, courts adopt the meaning that renders the term effective, art. 2049, and provisions are interpreted in light of other provisions "so that each is given the meaning suggested by the contract as a whole," art. 2050.

Under Louisiana law, "[a] mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals." LA. R.S. 31:114. "Mineral leases are construed as leases generally and, wherever pertinent, codal provisions applicable to ordinary leases are applied to mineral leases." *Frey v. Amoco Prod. Co.*, 603 So. 2d 166, 171 (La. 1992). If there is a conflict between the Civil Code or other laws and the Mineral Code, the Mineral Code prevails. *Id.*

Mineral leases must have a temporal term. LA. R.S. 31:115(A). A "term" is a "period of time" for "the performance of an obligation." LA. CIV. CODE art. 1778. When the term "is not marked by a specific date but is rather a period of time, the term begins to run on the day after the contract is made, or on the day after the occurrence of the event that marks the beginning of the term." art. 1784. If the event that marks the beginning of a term is uncertain to occur, the term may be subject to a suspensive condition. art. 1767. A suspensive condition prevents enforcement of an obligation "until the uncertain event occurs." *Id.* "The suspensive condition, under

the Louisiana Code, is the equivalent of the condition precedent at common law." *City of New Orleans v. Tex. & P. Ry. Co.*, 171 U.S. 312, 334 (1898).

In practice, mineral leases will generally have a "two-tiered" term. *Regions Bank v. Questar Expl. & Prod. Corp.*, 184 So. 3d 260, 265 (La. App. 2d Cir. 2016). "The first tier, or primary term, is of definite duration. The second tier is of indefinite duration and operates to extend the Lessee's rights under the lease so long as the conditions of the secondary term are met." *Id.*; *see also* LA. R.S. 31:115 cmt. The scope of the primary and secondary terms is defined in a lease's *habendum* clause. *See* 3 WILLIAMS & MEYERS, OIL AND GAS LAW § 604 (2023). In Louisiana, if production of the mineral has not commenced within the primary term, the *habendum* clause will terminate the lease automatically. LA. R.S. 31:124 cmt.; *Landry v. Flaitz*, 157 So. 2d 892, 895 (La. 1963).

We now consider how this law applies to the facts of this case.

## II. *The Plaintiffs' mineral lease*

The mineral lease here contains the following *habendum* clause:

> 2. Subject to the other provisions herein contained, this Lease shall be for a period of Three (3) years from the date Lessee procures approval to commence operations from local, state, and federal authorities, as needed, (called the "Primary Term") and as long thereafter as (1) clay, soil or other solid mineral is produced from said land hereunder; or (2) it is maintained in force in any other manner herein provided.

This language fixes the primary term at three years "from the date" the Plaintiffs procure necessary approvals from relevant authorities. Procuring necessary regulatory approval is therefore a suspensive condition that must be fulfilled for the primary term even to begin. LA. CIV. CODE art. 1767. In district court, the Plaintiffs admitted as an uncontested material fact that "they need to obtain a change in the zoning classification and a

permit." The Plaintiffs have not procured these approvals. In other words, they have not fulfilled the lease's suspensive condition, and therefore the lease is not yet in effect. This conclusion is based on "the words of a contract [that] are clear and explicit and lead to no absurd consequences," so we are precluded from further inquiry into the parties' intent. art. 2046.

The Plaintiffs attempt to avoid the clear terms of the mineral lease through several arguments. They contend the district court's analysis confused the beginning of the lease's primary term with a suspensive condition. The Plaintiffs claim that the mineral lease is a contract *of* lease, rather than a contract *to* lease. As a result, they insist the lease became effective on the date it was signed.

To accept the Plaintiffs' arguments, however, would require that we ignore the clear and unambiguous language of the lease, which we cannot do under Louisiana law. *See Clovelly Oil Co. v. Midstates Petroleum Co.*, 112 So. 3d 187, 192 (La. 2013). That is, the Plaintiffs maintain that we should interpret the *habendum* paragraph to read that the primary term is "for a period of three years," but then ignore the text conditioning the start of the primary term on procuring governmental approvals. One way to interpret the argument is that the start of a primary term cannot be subject to a suspensive condition, nor can a contract *of* lease be converted to a contract *to* lease as a result of a suspensive condition.

The Plaintiffs cite no authorities for this proposition.[5] In fact, Louisiana caselaw supports the opposite. The Louisiana Supreme Court has

_____

[5] Louisiana law recognizes the difference between a contract *of* lease and a contract *to* lease. *See* La. Civ. Code arts. 2668, 2670. That does not assist the Plaintiffs because no authority has been identified that holds a contract of lease cannot be subject to a suspensive condition. Indeed, Comment (d) to Article 2668 states that agreement on the rent and thing to be leased "does not necessarily mean that a contract of lease has come into existence if the parties did not so intend." Here, the intent of the parties is clear by

held that, when a co-owner of an undivided interest in land leased their mineral interests to another, the lease was "an executory contract dependent for its operation upon a suspensive condition." *See Sun Oil Co. v. State Min. Bd.*, 92 So. 2d 583, 586–87 (La. 1956). This was because the lessee could not enforce the lease against the other co-owners without their consent or acquiescence. *Id.* Thus, it was clear the parties to the lease did not contemplate its enforcement until such consent or acquiescence was procured. *Id.* at 587. The court concluded "[t]he lease in question vests no rights in either party since it confers neither rights nor obligations until the happening of the suspensive condition." *Id.*

Louisiana courts have found suspensive conditions in mineral leases in other contexts as well. "Top leases," for example, are mineral leases over land already subject to "another mineral lease that become effective if and when the existing lease expires or is terminated." *Amber, LLC v. Welsh Oil Co.*, 319 So. 3d 427, 435 (La. App. 2d Cir. 2021). Expiration or termination of the existing lease is therefore the suspensive condition of the top lease. *See id.* In terms of legal rights, at their inception these leases are a "mere hope or expectancy" in the termination of the existing leasehold rights. *Id.* Similarly, Louisiana courts have held that assignments of mineral rights based on leases not yet obtained are insufficient to create ownership interests because the assignments are subject to the suspensive condition of obtaining the lease. *See Kincade v. Midroc Oil Co.*, 769 So. 2d 813, 816 (La. App. 2d Cir. 2000).

Here, the suspensive condition requires that the Plaintiffs obtain governmental approvals, as necessary, for the primary term to begin.

---

the unambiguous text of the lease: the primary term is for three years "from the date Lessee procures approval" needed to commence operations.

Because they have not been obtained, the district court was correct in determining the lease had not yet become effective.

We are aware Louisiana law disfavors inferring suspensive conditions in contracts because they mean "one party intends to assume an added contractual risk before that party can demand reciprocal performance, *i.e.,* that the condition be fulfilled." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 622 (5th Cir. 2005). Suspensive conditions should be found "only when the express language of the contract 'compels' such a construction." *Id.* (quoting *Hampton v. Hampton, Inc.*, 713 So. 2d 1185, 1190 (La. App. 1st Cir. 1998)). Even so, we are convinced the lease here has express language that compels such a construction. Paragraph 2 of the mineral lease clearly conditions the beginning of the primary term on procuring governmental approvals. As explained above, any other construction would require us to ignore the clear text of the lease, which we are powerless to do.[6]

Unable to rely on the text of the mineral lease, the Plaintiffs rely on extrinsic evidence. They argue their interpretation is supported by documents that indicate they and the Monteguts have believed the mineral lease has been in effect since October 31, 2018, continues to be in force today, and has been enforced previously. Such extrinsic evidence cannot be considered under Louisiana law, though. An article of the Civil Code precludes "further interpretation" when the words of the contract are "clear

---

[6] The Plaintiffs make two additional arguments that were not made before the district court. They assert the Monteguts can renounce the lease term under Civil Code article 1780 because the term is for their benefit. They also claim the suspensive condition should be considered fulfilled under Article 1772 because the Parish Council prevented its fulfillment. Because the Plaintiffs failed to raise these arguments before the district court, they are forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). To the extent the Plaintiffs properly raised their Article 1772 argument in district court, it is without merit because the Parish Council is not a party to the lease. *See* La. Civ. Code art. 1772 cmts. (a), (b); *Copeland v. Merrill Lynch & Co.*, 162 B.R. 743, 747 (E.D. La. 1993).

and explicit and lead to no absurd consequences." LA. CIV. CODE art. 2046. This is a rule of strict construction that prohibits considering extrinsic evidence regarding the parties' intent. *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 439–40 (5th Cir. 2002). Instead, we are bound to the four corners of the mineral lease because its language is "clear and explicit." *Id.*

In light of our interpretation of the lease as having an unmet suspensive condition, we need not consider any alternative reasons for affirmance.

In summary, the "clear and explicit" text of the lease compels a holding that the lease is not yet in effect because the Plaintiffs have not secured the necessary governmental approvals. Without an effective lease, the Plaintiffs have no vested property interest in the Montegut Tract or in any of its clay deposits. The Plaintiffs therefore lack standing to assert a takings claim under either the federal or state constitution. Finally, when plaintiffs have no standing and their complaint must be dismissed, the dismissal generally should be without prejudice. *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020).

We MODIFY the district court's judgment dismissing the Plaintiffs' claims for lack of standing to make it without prejudice and AFFIRM as modified.