Alvin C. COPELAND, et al.

v.

MERRILL LYNCH & CO., INC., et al.

Civ. A. Nos. 92–570, 92–3961.

United States District Court,
E.D. Louisiana.

Dec. 7, 1993.

744

Benjamin Richard Slater, III, Mark Edward Van Horn, Kevin Mark Wheeler and Donald J. Miester, Jr., Monroe & Lemann, New Orleans, LA, for plaintiffs.

William R. Forrester, Jr., Lemle & Kelleher, New Orleans, LA, for defendants.

McNAMARA, District Judge.

Before the court is the Motion for Partial Summary Judgment filed by Plaintiff, Alvin C. Copeland, in Civil Action No. 92–3961, one of the three actions constituting this consolidated matter. Defendant, America's Favorite Chicken Company ("AFCC") filed a memorandum in opposition, which both Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") and Defendant Canadian Imperial Bank of Commerce ("CIBC") adopted. The Motion, set for hearing on October 24, 1993, is before the court on written briefs, without oral argument.

### I. FACTUAL BACKGROUND

CIBC, as agent for a syndicate of lenders, and Merrill Lynch each agreed, subject to specified conditions, to provide certain financing to fund ACE's tender offer for the purchase of the outstanding shares of common stock of Church's Finest Chicken, Inc. The CIBC syndicate loaned ACE $285 million under a Merger Loan Agreement and Merrill Lynch loaned ACE $173 million under a Bridge Financing Agreement.

At the time of these loans, Plaintiff was the sole common shareholder, Chief Executive Officer and President of ACE. Because of Plaintiff's position of control and because Plaintiff was not to be personally liable for

repayment of the Merger Loan and the Bridge Loan, the lenders required certain protective measures, including the Recipe Royalty Agreement, as conditions for their loans to ACE. The Recipe Royalty Agreement provided that Copeland and New Orleans Spice Company, Inc. ("Spice") would receive no royalty payments from any franchised or company-owned store opened after March 21, 1989. This provision ended on the "Termination Date" defined in the Recipe Royalty Agreement as:

the date (i) on which [ACE] has repaid in full all loans under the Bridge Financing Agreement, (ii) on which [ACE] has reduced the amounts outstanding under the Merger Loan Agreement to $75,000,000 *and* (iii) on which the Fixed Charged Coverage Ratio (as defined in the Indenture attached as an Exhibit to the Bridge Financing Agreement) (the "Fixed Charged Coverage Ratio") first exceeds 2 to 1 for four consecutive fiscal quarters. (emphasis added)

The sole parties to the Recipe Royalty Agreement were Copeland, Spice, and ACE. Neither CIBC nor Merrill Lynch was a party to the Agreement.

ACE eventually defaulted on its obligations under its Merger Loan and Bridge Loan, owing CIBC approximately $279 million and Merrill Lynch approximately $155 million. CIBC and Merrill filed an involuntary Chapter 11 Bankruptcy Petition against ACE in the Western District of Texas, Austin Division. Shortly thereafter, ACE filed a voluntary Chapter 11 Petition and the matter was converted to a voluntary proceeding.

Ultimately, the Bankruptcy Court confirmed the fourth reorganization plan proposed by CIBC. Pursuant to this confirmed plan, the CIBC syndicate lenders were to exchange $50 million of their existing loans for preferred stock in the company, with the remaining loan to be repaid pursuant to a Second Amended and Restated Merger Loan Agreement with ACE's successor-in-interest. The Second Amended Merger Loan Agreement expressly provided that New Amended and Restated Tranche A Notes would replace the First Amended Merger Loan Agreement notes and would

be restatements of the Original Obligations [outstanding under the First Amended Merger Loan Agreement] (reduced in amount, however, by the amount of the Original Obligations exchanged into New Preferred Stock pursuant to the reorganization plan ...), and the delivery thereof shall constitute, and shall be treated for all purposes as, an amendment to the Original Notes [outstanding under the First Amended Merger Loan Agreement] *without the occurrence of a novation or the satisfaction of the Original Notes* (except to the extent of the amount of the Original Obligation so exchanged). (emphasis added)

*See* AFCC Exhibit No. 4, p. 18.

Further, the New Amended and Restated Tranche A Note issued under the Second Amended Merger Loan Agreement similarly stated:

This Note is a restatement of the Original Obligations (reduced in amount, however, by the amount of the Original Obligations exchanged into New Preferred Stock pursuant to the Reorganization Plan ...), and the delivery hereof constitutes, and is for all purposes, an amendment to the Original Note of the bank *without the occurrence of a novation or the satisfaction of such Original Note* (except to the extent of the amount of the original obligation so exchanged). (emphasis added)

*See* AFCC Exhibit No. 5.

With respect to Merrill Lynch, the confirmed reorganization plan provided for Merrill Lynch to receive 18% of the common stock of the reorganized entity and preferred stock of AFCC with a face value of $6 million and market value of approximately $4.2 million. Therefore, Merrill Lynch's total recovery would be approximately $8 million since its outstanding claim was worth approximately $155 million. The remaining Bridge Loan was to be discharged.

The confirmed reorganization plan further authorized ACE to merge into AFCC and to assume various pre-petition contracts of ACE, including the Recipe Royalty Agreement. The plan also discharged ACE from

all pre-petition debts as provided under Section 1141(d) of the Bankruptcy Code.

Plaintiff now seeks a judgment declaring that his obligations to AFCC under the Recipe Royalty Agreement have terminated as a result of the reorganization plan confirmed by the Bankruptcy Court in Chapter 11 Bankruptcy Proceedings of Al Copeland Enterprises, Inc. ("ACE"). Having considered the memoranda of counsel and the applicable law, the court finds that: (1) there are genuine issues of material fact concerning whether the Termination Date of the Recipe Royalty Agreement has occurred through novation; and (2) as a matter of law, Plaintiff is not entitled to a judgment declaring that the Termination Date has occurred due to impossibility of performing its resolutory conditions.

## II.  LEGAL ANALYSIS

A. *There are genuine issues of material fact as to whether the Termination Date has occurred through novation.*

Plaintiff argues that obligations set forth in both the Merger Loan and the Bridge Loan have been "novated" by the Bankruptcy reorganization plan because: (1) the obligations owed to CIBC under the Merger Loan were marked canceled and new notes were substituted in their place; and (2) the amount owed to Merrill Lynch under the Bridge Loan was extinguished when Merrill Lynch subordinated its claim. Under Louisiana law,[1] novation is defined as "the extinguishment of an existing obligation by the substitution of a new one." La.Civ.Code Art. 1879.

■ The most important factor in determining whether novation has been effected is the intent of the parties to effect a novation. *Scott v. Bank of Coushatta*, 512 So.2d 356, 360 (La.1987). Further, "the intention to

extinguish the original obligation must be clear and unequivocal. Novation may not be presumed." La.Civ.Code Art. 1880.

■ In his Motion for Partial Summary Judgment, Plaintiff has failed to demonstrate there is no genuine issue of material fact as to whether Merrill Lynch and CIBC clearly and unequivocally intended to novate the Bridge Loan and the Merge Loan debt respectively. The court rejects Plaintiff's attempt to treat CIBC's and Merrill Lynch's consent to the reorganization plan as the kind of creditor action which manifests the requisite intent for novation as "[a] creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings." *In the Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346, 1351 (5th Cir.1989).

■ Further, in the case of the CIBC Merger Loan, the new Amended and Restated Tranche A Note issued under the Second Amended Merger Loan Agreement indicates that CIBC did not intend to novate the Merger Loan debt. *See* emphasized language of both the new Amended and Restated Tranche A Notes and the Second Amended Merger Loan Agreement cited on pp. 745–46, *supra*[2]; *See also*, Affidavit of Heinz H. Noeding, attached to AFCC's opposition memorandum.

■ Finally, as a matter of law, ACE's federal bankruptcy "discharge" does not result in the "extinguishment" of ACE's underlying debts, but merely releases ACE from personal liability for the debts. *Matter of Edgeworth*, 993 F.2d 51, 53 (5th Cir.1993); 11 U.S.C. §§ 524(a) & (e); *see also, Earl v. Liberty Loan Corp.*, 193 So.2d 280, 282 (La. App. 2nd Cir.1966) (a discharge in bankruptcy neither destroys the debt nor supplants the moral obligation to pay).

1. Plaintiff apparently assumes that Louisiana law governs the issue of novation. AFCC points out that it is at least arguable that the issue of novation should be governed by New York law which is the law governing the original Merger Loan and Bridge Loan. However, AFCC concedes that the essential elements of novation appear to be substantially the same under either New York or Louisiana law.

2. Plaintiff argues that this emphasized language is meaningless to CIBC's true intent because the Tranche A Note was not executed until November 5, 1992 after the novation issue had already been joined in this suit. However, the court finds that such language, at a minimum, creates a genuine issue of material fact as to whether CIBC intended to novate its Merger Loan.

■ Therefore, while the bankruptcy reorganization plan discharged ACE from personal liability for the repayment or reduction of Bridge Loan and the Merger Loan (i.e., conditions defining the Termination Date), the bankruptcy reorganization plan did not extinguish or "novate" the obligations to repay or reduce the Bridge Loan or the Merger Loan. *Compare, In Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346, 1351 (consent for a *dation en paiement* is not obtained by a discharge of the debtor in bankruptcy); *Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir.1982) ("a creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings, simply because the gamesmanship imported from state contract law into the bankruptcy proceedings would be intolerable"); *FSLIC v. Smith*, 1987 WL 15320 (E.D.La.1987) (Defendant guarantor submitted insufficient evidence that a novation of the continuing guaranty contract occurred when the FSLIC participated as a creditor in the Chapter 11 proceedings).

B. *As a matter of law, the court finds that the Termination Date has not occurred through legal impossibility.*

■ Under the terms of the Recipe Royalty Agreement, Plaintiff agreed to forego and relinquish his right to receive new store royalties unless and until the occurrence of all three Termination Date conditions. These three conditions are "resolutory" conditions since they are obligations which may be immediately enforced but will come to an end when an uncertain event occurs. *See* La. Civ.C. Art. 1767.

Plaintiff initially argues that Merrill Lynch's acceptance of the reorganization plan rendered repayment of the Bridge Loan a legal impossibility, because Merrill Lynch agreed to voluntarily subordinate the amounts owed by ACE under the Bridge Loan, in return for stock interest in the new company, AFCC. Plaintiff then argues that

the Recipe Royalty Agreement's Termination Date has occurred due to the impossibility of performing the first resolutory condition (i.e., repayment of the Bridge Loan) defining the Termination Date.

■ However, the court finds that the impossibility of this first resolutory condition occurring does not render the underlying obligation a nullity. "[O]nly unlawful or impossible conditions that are *suspensive*[3] make an obligation null. If such a condition is *resolutory*, the policy reasons calling for nullity are absent." La.Civ.Code Art. 1769, Comment (a) (emphasis added).

■ Further, even if the first and third conditions[4] defining the Termination Date are impossible to perform and therefore are deemed to have occurred, the second condition regarding payment of the CIBC loan down to a level of $75 million remains capable of being fulfilled. Therefore, because the three conditions defining the Termination Date are in the conjunctive, this second condition must be satisfied before the Termination Date occurs.

■ Copeland also argues that pursuant to La.Civ.Code Art. 1772, the Termination Date conditions are impossible to perform because CIBC and Merrill Lynch are at "fault". La.Civ.Code Art. 1772 provides that "a condition is regarded as fulfilled when it is not fulfilled because of the fault of a *party* with an interest contrary to the fulfillment." (emphasis added). However, the court finds that neither CIBC nor Merrill Lynch was a *party* to the Recipe Royalty Agreement.

■ Further, even if by virtue of the reorganization plan they are considered parties to the Recipe Royalty Agreement because they are now "equity owners of AFCC," the court finds that neither CIBC nor Merrill Lynch had "an interest contrary to the fulfillment" of the resolutory conditions, which included reduction of the Merger Loan and repayment of the Bridge Loan. The court rejects Plaintiff's circuitous argument that "CIBC or Merrill Lynch had an

---

3. A suspensive condition is defined as an obligation which may not be enforced until an uncertain event occurs. *See* La.Civ.C. Art. 1767.

4. The third of the three Termination Date conditions, i.e., the "Fixed Charge Coverage Ratio," is

linked to the Bridge Loan. Therefore, analysis of whether or not the first Bridge Loan condition should be deemed to be fulfilled is equally applicable to this third condition.

interest contrary to the termination of Copeland's obligations under the contract that was subject to the resolutory condition." *See* Plaintiff's Reply Memorandum, p. 7.

Finally, CIBC's and Merrill Lynch's exercise of legal rights as creditors in the Bankruptcy Proceedings to achieve the reorganization plan does not constitute "fault" within the meaning of La.Civ.Code Art. 1772. Plaintiff has offered no evidence demonstrating that, but for CIBC's and Merrill Lynch's actions in the bankruptcy proceedings, the Bridge Loan would have been paid in full and the resolutory conditions accomplished. To the contrary, it was ACE's inability to pay its outstanding debts in the first place that precipitated bankruptcy. *See* Noeding Affidavit, paras. 10–11, 15.

### III. CONCLUSION

Because the court finds that there are genuine issues of material fact as to whether the Termination Date of the Recipe Royalty Agreement has occurred through novation *and* Plaintiff is not entitled to judgment as a matter of law declaring the Termination has occurred due to impossibility of performing its resolutory conditions,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment filed in Civil Action No. 92–3961, consolidated herein, be and is hereby **DENIED.**